## ARMSTRONG CORK CO. v. H. A. MELDRUM CO.

(District Court, W. D. New York.   December 4, 1922.)

Corporations &#9096;382—Subscriptions to educational institutions held within the powers of a business corporation.

Subscriptions by a business corporation to educational institutions, authorized by the directors, where there was a reasonable probability of direct benefit to the corporation from the activities of the institutions aided and where similar subscriptions were made by other corporations, *held* within the corporate powers and valid, and receivers of the corporation, in the absence of objection by creditors or stockholders, authorized to allow the claims of the beneficiaries as general creditors.

In Equity.   Suit by the Armstrong Cork Company against the H. A. Meldrum Company.   On application by receivers for instructions.

Kenefick, Cooke, Mitchell & Bass, of Buffalo, N. Y., for receivers.
John Lord O'Brian, of Buffalo, N. Y., for University of Buffalo.
George W. Wanamaker, of Buffalo, N. Y., for Canisius College.

HAZEL, District Judge.   On return of the show cause herein and request for instructions by the receivers, it was stated ore tenus that, since there was no objection from creditors or stockholders, the receivers were authorized to pay proportionately out of the funds in their custody the two subscriptions of the president and directors of the insolvent company, made by them in October, 1919, while the company was believed solvent, to the endowment fund of the University of Buffalo and to the endowment fund of Canisius College, and the views here submitted are supplementary.

It appears by affidavit that the subscriptions were made with the sanction and approval of three out of five directors of the company, after full discussion as to the possible benefits to be derived by the corporation from their action.   The directors authorizing the subscriptions were the managers of the business, and they had been such for a long time.   It was regarded by them as a proper incidental business expenditure, and no objection has ever been made by the nonattending directors or stockholders.

It appears, also, that at the time the subscriptions were made it was considered that no collegiate institute in Buffalo presented opportunity for education in the science of business, and as the company had many employees of various classes it would in all probability inure to the future advantage of the company to be able to secure employees trained and skilled in corporate business and industrial affairs, especially involving knowledge of financial accounting, management, and administration of the business in its various departments, bookkeeping, salesmanship, advertising according to modern methods, etc.   The donees contemplated and already have engaged competent teachers at large expense to instruct students in these branches of education, in reliance upon the payment of the donations of the defendant and other subscribers to the endowment funds.   It was also considered, in making the subscriptions or donations, that the company would receive

&#9096;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

advertisement of substantial value, including the good will of many influential citizens and of its patrons, who were interested in the success of the development of these branches of education, and, on the other hand, suffer a loss of prestige if the contributions were not made, in view of the fact that business competitors had donated and shown a commendable public spirit in that relation. In the circumstances the rule of law that may fairly be applied is that the action of the officers of the company was not ultra vires, but was in fact within their corporate powers, since it tended to promote the welfare of the business in which the corporation was engaged.

I think the advantage derived was tantamount to a personal benefit. It is difficult to define a clear rule of law which will precisely determine whether a particular act is within or without the power of the officers of a corporation, and cases hold that the court has discretion in relation thereto and should exercise a sound judgment. Certainly the circumstances are such as to indicate that the officers, at the time of making the contributions, exercised their best judgment, and since they had the power to regulate the affairs of the business their action in this particular is believed to have been within the limits of their authority. Moreover, the capital stock is owned by a few persons, all relatives, and the corporation was in its nature a so-called family corporation.

In Steinway v. Steinway, 17 Misc. Rep. 47, 40 N. Y. Supp. 720, the learned court having a similar question before it said:

"If that act is one which is lawful in itself and not otherwise prohibited, is done for the purpose of serving corporate ends, and is reasonably tributary to the promotion of those ends, in a substantial and not in a remote and fanciful sense, it may fairly be considered within charter powers. The field of corporate action in respect to the exercise of incidental powers is thus, I think, an expanding one. As industrial conditions change, business methods must change with them, and acts become permissible which at an earlier period would not have been considered to be within corporate power."

This rule, it is thought, may fittingly be applied, especially as neither stockholder nor creditor challenges the right exercised by the officers to make the contributions. I therefore conclude and determine that the facts disclosed the possibility of a direct benefit flowing to the defendant in making the contributions—contributions that were neither extravagant nor inordinate, but were in fact reasonable in amount, considering the character of the business and the prominence and reputation of the defendant. There are numerous cases holding that subscriptions to enterprises remotely connected with the business of the corporation, as, for example, subscriptions to assist in the erection of a theater building, or to assist in paying expenses of a festival or fair, or where the contribution is to a political campaign committee, are ultra vires, and actions to recover the subscriptions are not maintainable. But I think this case is sui generis, and must be determined upon a more liberal principle, in view of the beneficial results that were obtainable by the educational development.

The receivers are therefore authorized to treat the University of Buffalo and Canisius College as general creditors under the two contracts of subscription in question, and pay dividends thereon, treating

them as creditors on a par with other general creditors. Their final accounting in this relation will receive the approval and sanction of the court.

So ordered.