**UNITED STATES ex rel. MARO v. MATH-
UES, U. S. Marshal.**

District Court, E. D. Pennsylvania.   September
10, 1927.

No. 60.

Criminal law ⏧97(3)—Act relating to homi-
cides on high seas held not to apply to of-
fense committed on American vessel when
moored to wharf in foreign port (Criminal
Code [18 USCA § 451).

The provisions of Criminal Code, § 272 (18
USCA § 451), defining and prescribing punish-
ment for homicides "committed upon the high
seas, or * * * within the admiralty and
maritime jurisdiction of the United States and
out of the jurisdiction of any particular state,
* * * on board any vessel belonging in whole
or in part to the United States or any citizen
thereof," do not apply where the offense
charged was committed on an American vessel
where moored to a wharf in a foreign port.

Habeas Corpus. Petition by the United
States, on the relation of Joseph Maro,
against W. Frank Mathues, United States
Marshal, for writ of habeas corpus. Relator
discharged.

Adrian Bonnelly, of Philadelphia, Pa.,
for relator.

George W. Coles, U. S. Atty., of Philadel-
phia, Pa., for defendant.

DICKINSON, District Judge. The final
disposition of this cause has been delayed.
The conclusion reached is that the relator
should be discharged.

Discussion.

The relator is under indictment for an of-
fense arising out of homicide. The sole ques-
tion now raised is one of jurisdiction. This
word is a very comprehensive one, and is
used in many different senses. It is used
to express the presence of governmental pow-
er, as, for illustration, that a vessel of any
nation is viewed as part of the territory sub-
ject to the governmental control of that na-
tion. It is this thought of jurisdiction which
is urged upon us in the brief submitted by
the prosecution. Jurisdiction, however, may
have a much narrower significance. This
cause affords us an apt illustration of the dis-
tinction. Conceding jurisdiction in the sense
of governmental control over a vessel, a sec-
ondary question arises of the jurisdictional
power to denounce some act as a crime and
of a particular court to try the offense. The
third question suggested is not here raised,
but the second question is.

Analyzing the general question of juris-
diction into these three parts, the first and
third may be conceded, and our attention cen-

tered upon the second. Congress has no pow-
er to denounce an act as criminal merely be-
cause it was committed within the territorial
jurisdiction of the United States. The power
here is to be found, if it exists, in that pro-
vision of the Constitution which granted the
express power to Congress "to define and
punish [inter alia] felonies committed on the
high seas," etc. Article 1, § 8, cl. 10. The act
here charged to have been committed, if an
offense against the laws of the United States,
is a felony, and its definition and punish-
ment undoubtedly within the power of Con-
gress, if the other condition is likewise pres-
ent. That condition is that the offense was
committed upon the high seas. Inquiry here
is in consequence narrowed to the fact in-
quiry of where the act was committed. If
on the high seas, Congress has declared it
to be an offense against the laws of the
United States; otherwise, not.

In the assertion of the power thus com-
mitted to it, Congress has ordained that the
different grades of homicide committed "upon
the high seas or on any * * * waters
within the admiralty and maritime jurisdic-
tion of the United States and out of the ju-
risdiction of any particular state, * * *
on board any vessel belonging in whole or in
part to the United States or any citizen
thereof," etc. (Criminal Code, § 272 [18
USCA § 451]) are offenses against the laws
of the United States. The offense here, if
any, was committed in an Italian port. The
quoted expression of Congress evidently has
application to domestic and not foreign wa-
ters and to waters which are outside of the
jurisdiction of any nation and are commonly
denominated the high seas.

The Wildenhus Case, 120 U. S. 12, 7 S.
Ct. 383, 30 L. Ed. 565, gives very clear ex-
pression to the doctrine of the law so far as
it arises out of the principle of comity. The
act of Congress expresses the same thought
with respect to the jurisdiction of our states
and nation. There is no insuperable objec-
tion, however, to an act being denounced as
an offense against the laws of one govern-
ment and being likewise also denounced as an
offense against the laws of another. This
doctrine is so well recognized that the cita-
tion of authorities in support of it would be
superfluous. The doctrine is, of course, open
to the objection that the offender is subjected
to a double charge for the same act; but
there are other considerations deemed to be
of sufficient importance to override this ob-
jection.

This brings us back to the fact question of
the locality of the commission of the offense.

The feature of the admiralty and maritime jurisdiction of the United States does not directly affect the question before us. It affects it only in so far as the territorial limits of admiralty and maritime jurisdiction define the territorial limitations of the criminal jurisdiction. The question here is really narrowed to one of the powers of Congress, and deference to this view of it probably accounts for the difference in phraseology between the earlier acts of Congress and the act now in force. Congress (at least expressly) is not given authority "to define and punish felonies," but is given such power only when the felonies are committed on the high seas. The point sought to be made clear is that the question is not one of admiralty and maritime jurisdiction, but is one of criminal jurisdiction.

The distinction, of course, may fade into vanishment in the presence of the doctrine that a vessel is part of the territory of the nation of its owners, and hence the qualifying phrases, "waters within the admiralty and maritime jurisdiction," etc., "and out of the jurisdiction of any particular state, * * * on board any vessel," etc. This, however, does not enable us to escape the constitutional restriction of the power of Congress to define and punish felonies only when committed on the high seas. The power to denounce crimes committed on a vessel of the United States, and thus within its territorial jurisdiction, when not within the jurisdiction of any particular state, may be within the implied powers of Congress. If it were, however, the power must have been exercised by Congress, and the courts have inclined to the view that the quoted act of Congress does not apply outside of the strictly territorial jurisdiction of the United States, and has not been made to apply to offenses committed on a vessel as part of such territory.

This brings us to the proposition that Congress has not undertaken to define and punish felonies, other than those committed on the high seas, or upon waters within the territorial jurisdiction of the United States, which are not within the jurisdiction of any particular state, and back to the question of fact, already several times adverted to, of whether or not the offense here charged was committed on the high seas. The question of what constitutes the high seas, as distinguished from what are called territorial waters, really belongs to the domain of international law. The numerous cases to which we have been referred all make the ruling turn upon this question of fact. In the argument at bar it would seem to be conceded that a vessel lying at dock, as when tied to a pier or wharf, is not on the high seas. It is not conceded that a vessel within the recognized limits of a harbor lying at anchor would not be on the high seas. There is a controversy here over the evidentiary fact of where this vessel was, with respect to its being tied to a pier or at anchor within the harbor. We dispose of this fact controversy by the finding that the vessel was moored to the wharf.

The ruling follows that the relator be discharged without day. We may add that the brief submitted by the district attorney assumes that the Italian authorities discharged the relator because of recognition of the fact that the offense, if any, was committed outside of the domain of Italian law. It would seem that this assumption is not justified, but, on the contrary, that the defendant was discharged because there was no evidence that a homicidal offense had been committed.