134

**UNITED STATES v. FLORES.**

No. 4932.

District Court, E. D. Pennsylvania.
March 4, 1932.

On Motion on Reargument, Nov. 7, 1932.

E. W. Wells, U. S. Atty., of Philadelphia, Pa.

John V. Lovitt, of Philadelphia, Pa., for defendant.

DICKINSON, District Judge.

The question discussed in this case would be a very interesting one if it had not been set at rest by the Circuit Court of Appeals for the Third Circuit in the case of Mathues v. United States ex rel. Maro, 27 F.(2d) 518. A procedural difficulty might be thought to intervene, in that the question discussed is sought to be raised by demurrer. All desire, however, the real point made to be met regardless of mere formalities. There has, moreover, been a compliance with these forasmuch as the defendant had the right to a bill of particulars which has been furnished in the form of a stipulation of the fact situation out of which the law asked to be ruled arises, and a bill of particulars when fur-

nished becomes part of the bill of indictment. If a bill of indictment charges no criminal offense of which the court can take judicial cognizance, such question can be raised by demurrer. This preliminary question being thus out of the way, we face the real question raised. The indictment charges that the defendant, a citizen of the United States, was on board and one of the crew of an American ship at the time in a port under the jurisdiction of the King of Belgium in the inland waters of a river 250 miles from the sea, and moored to a wharf erected on the land from which the ship was taking on her cargo, and that the defendant then and there assaulted and caused the death of a shipmate, who was also a citizen of the United States and a member of the same crew. This killing, the indictment further charges, was a felonious homicide denounced by and under the laws of the United States as a crime committed against its "peace and dignity." We may premise that the indictment does not charge nor can this court try the defendant for an offense against the laws of the kingdom of Belgium, the laws of Pennsylvania, or for any offense other than one denounced by an act of Congress as a crime. The question thus becomes whether any act of Congress or law of the United States has conferred upon this court the judicial power to try him. The question has been discussed pro and con with great ability and with a commendable display of frankness and fairness. Where are we to look for a grant of the power in question? The United States attorney makes a very broad answer to this question by pointing to the commerce clause of the Constitution and to the grant of judicial power in cases of "Admiralty and Maritime Jurisdiction." It is worthy of comment that the enumerated powers granted to Congress by section 8 of article 1 include no reference to admiralty or maritime matters except in the power "to define and punish piracies and felonies committed on the high seas, and offenses against the law of nations" (clause 10) and the power to regulate "captures on land and water" (clause 11) with the references to the navy. The only direct reference to admiralty and maritime law is that in section 2 of article 3 providing that the judicial power shall extend to this subject.

We are unable to see that the law maritime has any bearing upon the subject under discussion, as admiralty courts are not and under our Constitution cannot be courts of criminal jurisdiction. It is only by indirection and secondarily that admiralty jurisdiction enters into the question before us as

when our act of Congress in defining a crime limits it to acts committed in places within the admiralty and maritime jurisdiction of the United States. Then, of course, resort must be had to the law maritime to identify such places. Beyond all question this ship, her master and crew, were subjects of this law for whatever bearing this may have. Under the system of the administration of criminal justice in the United States, as distinguished from the several states, two things are required. Congress must have the constitutional power to legislate, and it must have exercised the power by the passage of a law. There are no crimes against the United States other than statutory offenses. This distinction is of no present importance, because the Constitution grants to Congress the power "to define and punish * * * felonies committed on the high seas," and the present Criminal Code follows the phraseology of the Constitution, so that whatever one means the other means. The law we now have (Criminal Code § 272 [18 USCA § 451]) is a recurrence to the original act of 1790 (1 Stat. 112) and almost a reproduction of its phraseology. It is true that in 1825 an act (4 Stat. 115) was passed which went much beyond the law as we now have it. The reason given for the change of phraseology was that there were a number of acts of varying phraseology, and it was thought to be desirable to bring them all into uniformity. Another reason may have been to bring the statute law into undoubted conformity with the Constitution. Whatever the motive may have been, the change was in fact made, and the offense defined has as an ingredient the element that it was "committed on the high seas." We fail to see the bearing of the act of 1825 other than as informative and illustrative. The opinion of Attorney General Cushing expressed in 1856, which it is to be noted was after the repeal of the act of 1825, confirms the view that an act to be a crime must have been committed on the "high seas." The high professional reputation of this distinguished official gives to his utterance the voice of authority. In the reading of the cases, the distinction must be kept in mind between the "waters" which are within the territorial domain of the United States and which may or may not be within the limits of one of our states and waters which give the courts of Admiralty maritime jurisdiction. There is no need to rule on the question of whether Congress has the constitutional power to denounce as a crime an act not committed on the "high seas" because the present Criminal Code makes no such attempt. The sole question is whether a vessel moored to a wharf 250 miles inland taking on or discharging her cargo is on the "high seas." The Circuit Court of Appeals for this circuit has decided this question for us, and by this ruling we are bound.

Demurrer sustained, and defendant discharged without day.

### Sur Motion for Reargument.

When this case was argued and ruled, it was upon the question of whether a vessel tied to a dock extending into a navigable stream, at a place miles above its mouth and far above any taint of salt water, was at the time on the "high seas."

On the authority of U. S. ex rel. Maro v. Mathues (D. C.) 21 F.(2d) 533, affirmed in (C. C. A.) 27 F.(2d) 518, we ruled the question in the negative. This meant that the demurrer interposed should be sustained and the defendant discharged. We are asked to review this ruling because, while the Maro Case is on all fours with this in its fact features, it differs, in that in this case the indictment avers the offense of murder committed on an American vessel out of the jurisdiction of any state but within the admiralty and maritime jurisdiction of the courts of the United States, while the Maro Case was argued and ruled as a case of murder committed on the high seas. The United States, we are told, accepted the ruling in the Maro Case because it did not care to further stand for the proposition that a vessel hundreds of miles from salt water was yet on the high seas. Care was taken in consequence in this case to indict the defendant, not for a murder committed on the high seas, but for a murder committed on an American vessel out of the jurisdiction of any state, but within the maritime jurisdiction of the courts of the United States. The distinction made is clear enough, but it takes us into the realm of constitutional law, and raises as well many and delicate questions of international relations, if not of international law.

Into these very interesting questions we see no need to go. It is agreed that this case and the Maro Case are alike in their facts. The Maro Case arose on habeas corpus. The defendant was open to indictment for any offense which arose out of the facts. He might in consequence have been indicted for the offense charged in this indictment. The Circuit Court of Appeals affirmed a judgment which discharged him without day. We must from this conclude that, as he might have been indicted for the offense here charged, such an indictment could not be sus-

tained. It follows that this indictment cannot be sustained. We feel bound by the Maro Case to so rule.

Motion for reargument denied.