68 U.S. 166 (1863)
1 Wall. 166
SWEENY ET AL.
v.
EASTER.
Supreme Court of United States.

*170 Mr. Davidge, for the plaintiff in error, contended.
Mr. J.H. Bradley, contra.
*172 Mr. Justice MILLER delivered the opinion of the court:[*]
The first exception was to the admission of R.H. Harris, of the firm of Harris & Sons, as a witness.
Neither that firm nor any of its members were parties to the suit, nor is it pretended that the witness was in any manner interested in the event of it. But it is claimed that because the name of the firm of which he is a partner, is indorsed on the negotiable paper which is the subject-matter of this suit, he cannot, being a party to such paper, be permitted to invalidate, or contradict it, or vary its legal import.
The objection as thus stated embraces two distinct propositions. First, that a party to a negotiable instrument shall not be permitted to impeach or render invalid, the paper with which he thus stands connected. Second, that he cannot be permitted to contradict or vary the legal import of the original paper, or such indorsement as he may have made on it, by parol testimony.
The latter objection applies to the character of the evidence, without regard to the person offered as a witness, and would be as effectual against testimony from the mouth of a person who had no connection with the paper, as from an indorser or maker of it.
*173 This is not a suit on the paper, or against any of the parties to it. It is an action of trover, for the wrongful conversion of the paper, in which plaintiffs seek to recover its value. The firm of Harris & Sons sent it to defendants, who were their banking correspondents, for collection; and they made a special indorsement on it, thus: "Pay Sweeny, R., F. & Co., for collection. SAM. HARRIS & SONS."
Now, does this testimony of the witness, to the effect that Harris & Sons were not the owners of the paper, and did not sell it to defendants, or intend to give them any lien on, or title to the paper, or its proceeds when collected, contradict or vary the legal import of this indorsement? We cannot see that it does. It rather explains the transaction in perfect conformity with the real meaning and effect of the indorsement. The words "for collection" evidently had a meaning. That meaning was intended to limit the effect which would have been given to the indorsement without them, and warned the party that, contrary to the purpose of a general or blank indorsement, this was not intended to transfer the ownership of the note or its proceeds. If defendants acquired any interest in the paper, it was not by virtue of that indorsement, but by some course of dealing with Harris & Sons, or by some other matter outside of the indorsement. The character of this indorsement also takes the case out of the rule asserted in the first proposition embraced by the exception.
Perhaps no subject connected with commercial paper has been more the subject of controversy, and of opposing and well-balanced judicial decisions, than the proposition here relied on. It was first laid down in the English courts in the case of Walton v. Shelley,[*] and afterwards held the other way in Jordaine v. Lashbrooke.[] This court, however, has steadily adhered to the doctrine of Walton v. Shelley, and we are referred by counsel for plaintiffs in error to our own decisions on this subject in 6 Peters, 51; 8 Peters, 12; 3 Howard, 73; 13 Howard, 229.
The rule propounded in Walton v. Shelley is, that a person *174 who has placed his name on a negotiable paper as a party to it, shall not afterwards, in a suit on such security, be competent as a witness to prove any fact which would tend to impeach or invalidate the instrument to which he has thus given his name. The reason of it is, that it is against good morals and public policy to permit a person who has thus aided in giving currency and circulation to such paper, to testify to facts which would render such paper void, after he has thus imposed it upon the public as valid, with all the sanction which his name could give it.[*]
The indorsement in the present case was not intended to give currency or circulation to the paper. Its effect was just the reverse. It prevented the further circulation of the paper, and its effect was limited to an authority to collect it. No principle of public policy would be violated, nor any fraud upon innocent holders of the paper would be perpetrated, by permitting the parties who made that indorsement to testify to facts which are in perfect harmony with its language and its intent.
Again, the testimony does not tend to invalidate the paper, or any indorsement on it. The defendants could not have recovered of Harris & Sons on that indorsement if the notes had been protested in their hands; and they were therefore deprived by that testimony of no right which the indorsement gave them; nor was such indorsement impeached or impaired by the testimony.
This exception must be overruled.
The second exception was taken to the refusal of the court to grant an instruction to the jury prayed by plaintiffs in error. The instruction asked is as follows:
"And the private practice of Harris & Sons, in transmitting negotiable paper having time to run, whereby they intended to distinguish between negotiable paper discounted by them and that received for collection, as given in evidence by the witness Harris, is not competent to charge the defendants with notice as to whether the paper in controversy was *175 discounted by and belonged to the said Harris & Sons, or was transmitted for collection, unless the jury shall find, from all the evidence in the case, that the defendants had knowledge of such private practice; and in the absence of such knowledge, the defendants were authorized to treat such paper according to what it purported on its face, and the general custom of bankers in the District of Columbia and elsewhere, offered in evidence."
This prayer contains two propositions, the one relating to the knowledge of defendants of certain private modes of doing business of Harris & Sons; and the other, to what the jury were authorized to infer, from certain other circumstances, in the absence of such knowledge on the part of defendants.
The instructions which were given by the court, and which are in the record, were full and sound on the first of these propositions, and we think were all that was necessary on both branches of the prayer. But the second branch of the instruction asked is objectionable, because it referred to the jury the interpretation of the indorsement on the paper, and also required of them to determine the case on the face of the paper, and the custom of bankers alone, without reference to the special facts proven in regard to the course of dealing between defendants and Harris & Sons. The charge of the court left all these matters of fact to the jury for their consideration, after a full and fair statement of all the principles of law which were necessary to a sound verdict.
We see no error in the record, and therefore the judgment of the Circuit Court is
AFFIRMED WITH COSTS.
NOTES
[*] Mr. Chief Justice Taney and Messrs. Justices Wayne and Grier, being in disposed, were absent.
[*] 1 Term, 296.
[] 7 Id. 601.
[*] Walton v. Shelley, 1 Term, 296; Bank of United States v. Dunn, 6 Peters, 57; Bank of the Metropolis v. Jones, 8 Id., 16.