DAKIN, RECEIVER, *v.* BAYLY, LIQUIDATOR.

No. 44. Argued October 20, 1933.—Decided November 20, 1933.

*Messrs. Donald C. McMullen* and *George B. Springston,* with whom *Messrs. F. G. Awalt* and *George P. Barse* were on the brief, for petitioner.

*Mr. Melvin A. McMullen,* with whom *Mr. Thomas Hamilton* was on the brief, for respondent.

By leave of Court, *Messrs. George P. Barse* and *John F. Anderson* filed a brief on behalf of the Comptroller of the Currency, as *amicus curiae.*

MR. JUSTICE ROBERTS delivered the opinion of the Court.

This was an action on the common counts and on an account stated brought in the United States District Court for Northern Florida by the receiver of First National Bank of St. Petersburg, Florida, against the Peoples Bank of Clearwater, Florida, a state bank. In addition to pleas of the general issue, the defendant pleaded specially that the St. Petersburg bank was indebted to the defendant in a sum in excess of plaintiff's claim, by virtue of the delivery to defendant of four drafts drawn by plaintiff on the Chase National Bank of New York to the defendant's order, which had been dishonored.

The plaintiff replied that certain checks or drafts drawn on the St. Petersburg bank or other banks in St. Peters-

burg were deposited for collection with the Clearwater bank; were forwarded by the Clearwater bank to the St. Petersburg bank for collection; the St. Petersburg bank collected the items drawn on it by charging the accounts of its depositors and those on other local banks by settlement of balances with them; the four drafts in question were sent to the Clearwater bank as remittances of the amounts so collected, pursuant to the collection letters accompanying the checks; neither bank carried an account or deposit in the other, and for a long period each bank had been sending checks and drafts to the other for collection and remittance; and averred that by reason of the facts stated there was no mutuality in the debts or demands existing between the parties at the time the action was brought, and the defendant was not entitled to the set-off sought in its pleas. The District Court sustained a demurrer to the replication, and, as plaintiff refused to plead further, entered judgment for the defendant for the excess of its demand. The plaintiff appealed to the Circuit Court of Appeals, where the present respondent was substituted as appellee, the Clearwater bank having gone into liquidation. That court affirmed the judgment, and, upon the plaintiff's petition, we granted certiorari.

The statute of Florida[1] permits set-off of " demands mutually existing . . . at the commencement of the action." The question is whether the debts were mutual. The Circuit Court of Appeals answered in the affirmative, basing the decision on the section of the Florida statutes which provides: [2] " The holder of a negotiable instrument

---

[1] "All debts or demands mutually existing between the parties at the commencement of the action, whether the same be liquidated or not, shall be proper subjects of set-off, and may be pleaded accordingly." Compiled General Laws of Florida, § 4326.

[2] Compiled General Laws of Florida, § 6810.

may sue thereon in his own name; and payment to him in due course discharges the instrument," saying that since the Clearwater bank might maintain a suit in its own name for the amount due by the petitioner, the demand might be set off; and that it was a matter of no concern to the petitioner whether the Clearwater bank held the checks for collection or for value. The petitioner urges that this holding bases the right of set-off upon a rule of procedure and ignores the substantive requirement that the demands must be mutual in quality; and says that the debt of the St. Petersburg bank was not to the Clearwater bank, which was a mere collecting agent, but to the depositors. The conclusion is that while the Clearwater bank individually owed the receiver of the St. Petersburg bank, the latter did not owe the former, but at best the claim was made as an agent. If this be true, set-off may not be allowed; for a defendant sued upon his individual debt may not avail himself for this purpose of a demand against the plaintiff held in a fiduciary capacity. *National Bank* v. *Insurance Co.*, 104 U.S. 54; *Libby* v. *Hopkins*, 104 U.S. 303; *Western Tie & Timber Co.* v. *Brown,* 196 U.S. 502; *United States* v. *Butterworth-Judson Corp.,* 267 U.S. 387, 394–5; *Thomas* v. *Potter Title & Trust Co.,* 2 F. Supp. 12.

Were the cross-demands of the parties of the same quality, or, to state it otherwise, did each claim from the other in the same right? In the ordinary case, the unrestricted endorsement and deposit of checks with the Clearwater bank would create the relation of debtor and creditor, and the bank would collect the items not as agent for the depositors, but as owner. *Exchange National Bank* v. *Third National Bank,* 112 U.S. 276; *Douglas* v. *Federal Reserve Bank,* 271 U.S. 489. A statute of Florida, however, requires of the bank of deposit only due diligence in the forwarding of such a check for collection and, in the absence of negligence, conditions liability for the amount

of the check on receipt of final payment from the collecting bank.[3]   The parties are presumed to have contracted with reference to this statute (*Federal Reserve Bank* v. *Malloy*, 264 U.S. 160), and the situation is as if they had expressly agreed that the Clearwater bank was to act as agent only and was not to become the debtor of the depositors unless and until it had received actual and final payment of the checks.   Since, then, the Clearwater bank acted as the agent of depositors in forwarding checks to the St. Petersburg bank, the depositors have a right of action against the latter for any default in collection or remittance.   *Federal Reserve Bank* v. *Malloy, supra;* see also *Miami* v. *First National Bank,* 58 F. (2d) 561.   The Florida courts have reached the same conclusion.   *Atlantic National Bank* v. *Pratt,* 95 Fla. 822; 116 So. 635; *Edwards* v. *Lewis,* 98 Fla. 956; 124 So. 746; *Myers* v. *Federal Reserve Bank,* 101 Fla. 407; 134 So. 600.

Much is made of the absence of any showing that the Clearwater bank did not credit the depositors in account immediately on receipt of the items for collection; but, in the absence of evidence to the contrary, we must assume the relation was what the statute made it—one of mere agency rather than one of debtor and creditor.   As was said in the *Malloy* case, the effect of the statute might

---

[3] " When a check, draft, note or other negotiable instrument is deposited in a bank for credit, or for collection, it shall be considered due diligence on the part of the bank in the collection of any check, draft, note or other negotiable instrument so deposited, to forward en route the same without delay in the usual commercial way in use according to the regular course of business of banks, and the maker, endorser, guarantor or surety of any check, draft, note or other negotiable instrument, so deposited, shall be liable to the bank until actual final payment is received, and when a bank receives for collection any check, draft, note or other negotiable instrument and forwards the same for collection, as herein provided, it shall only be liable after actual final payment is received by it, except in case of want of due diligence on its part as aforesaid." Compiled General Laws of Florida, § 6834.

be avoided by agreement or by clear and certain custom known to the depositor; but no such agreement or custom was pleaded by the defendant. The replication asserts the checks were deposited with the Clearwater bank for collection and were forwarded to the St. Petersburg bank for collection and remittance, and the defendant's demurrer admits these averments. On this record we are bound to hold that the St. Petersburg bank stands in the relation of agent to the individual depositors of the items, and is liable to them for failure to remit cash or equivalent in satisfaction of the amounts collected. The Clearwater bank must therefore sue as representative or agent of depositors; for a recognition of its right to sue as owner would destroy the cause of action of the depositors against the St. Petersburg bank, or leave that bank subject to a possible double liability. If the cross-demand is asserted in an agency capacity, the debts are not held in the same right by the two banks, lack mutuality, and the one cannot be set off against the other; if it is asserted by the Clearwater bank as owner of the drafts, the demand cannot be maintained, for the reason that no showing is made that the agency relationship was altered to that of debtor and creditor.

The respondent, however, seeks to support the judgment on another ground. He says that the Clearwater bank accepted the drafts, forwarded by the St. Petersburg bank, as payment, thus assumed ownership of them, acknowledged the change in the relationship to its depositors from that of collecting agent to that of debtor, and so properly pleads the off-set. We think this position cannot be maintained.

As respects the set-off of cross-demands, the rights of the parties became fixed at the moment of the insolvency of the St. Petersburg bank and consequent suspension of payment, *Scott* v. *Armstrong*, 146 U.S. 499, 511; *Davis* v. *Elmira Savings Bank*, 161 U.S. 275, 290; and the right

. to set off is governed by the state of things existing at the moment of insolvency, not by conditions thereafter arising, *Yardley* v. *Philler,* 167 U.S. 344, 360, or by any subsequent action taken by any party to the transaction, *Evansville Bank* v. *German-American Bank,* 155 U.S. 556. What, then, was the situation, as disclosed by the record, when the St. Petersburg bank closed its doors? That bank, as sub-agent for the Clearwater bank's depositors, had made collection and sent the drafts for the amount to the Clearwater bank. . It is incorrect to say that the St. Petersburg bank paid the amounts collected by forwarding drafts to the Clearwater bank, or that the Clearwater bank upon receipt of the drafts was bound to accept them as payment and its depositors were likewise thereupon bound to treat the agency of the Clearwater bank and that of the St. Petersburg bank as ended and the relation of debtor and creditor as established between them and the Clearwater bank. Equally inaccurate is the assertion that receipt and retention of the drafts required the Clearwater bank, unless its depositors asserted ownership of them, at once to credit the depositors with the amount of the items represented by the drafts. The bank was not bound to assume the relation of debtor until, in the words of the statute, it had received final payment, i. e., cash or its equivalent, and we should not presume that it did so.

Until these drafts were paid, the sub-agent had not discharged the obligation resting upon it, and remained liable to suit by the persons whose checks had been forwarded for collection and remittance, *Bank of Washington* v. *Triplett & Neale,* 1 Pet. 25; *Wilson & Co.* v. *Smith,* 3 How. 763; *Federal Reserve Bank* v. *Malloy, supra.* While the drafts were in course of collection the St. Petersburg bank failed. At the moment of suspension it remained liable as sub-agent to the depositors of the Clearwater bank, as we have shown. Could it also

be subjected to an independent liability to the Clearwater bank? Was it not entitled to treat the agency relation originally existing as still in force, in the absence of notice from the owners of the collection items that the status had been altered? Could any position taken by the Clearwater bank of its own initiative, affect without the depositors' consent the preëxisting relation of principal and sub-agent between the depositors and the St. Petersburg bank? We think not. Compare *Evansville Bank* v. *German-American Bank, supra.* Those depositors had an election either to sue the St. Petersburg bank or to bring action against the Clearwater bank for want of due diligence, or to treat the drafts as payment and hold the Clearwater bank as their debtor; but there is no intimation in the record that they made any election prior to the sub-agent's insolvency, nor indeed that they then knew whether collection had been effected or remittance received by the Clearwater bank. There is no reason to presume that they elected to stand on their cause of action against the Clearwater bank for lack of due diligence in accepting drafts instead of currency, and thus created a right of action in that bank against the St. Petersburg bank by way of subrogation, or to affirm that the agency had terminated and its status become that of a debtor. Nor is any custom pleaded whereby the Clearwater bank was to become the debtor of the depositors of the checks upon receipt of something other than cash or equivalent from the sub-agent. Compare *Federal Reserve Bank* v. *Malloy, supra.*

This view does not, as claimed, permit the St. Petersburg bank to assert on behalf of the owners of the checks an ownership in the drafts which they have never claimed. On the contrary, the sub-agent merely asserts its continuing liability to its principals as a reason why the forwarding agent may not, without showing the

agreement of the principal, seek to assert another and a different cause of action based on alleged ownership of the drafts by the forwarding bank. The question is not one of transference of ownership of the drafts to the customers of the Clearwater bank, but of the attempted use by that bank of the cause of action on the drafts as its own, in the teeth of the undenied existence of another cause of action arising out of the same transaction in favor of the bank's principals. *Bank of the Metropolis* v. *New England Bank,* 1 How. 234, presented a totally different situation from that here disclosed. In that case the forwarding bank, for all that appeared, was the owner of the paper. There was neither contract nor statute to the contrary. The course of dealing between the forwarding and the collecting bank was for the mutual exchange of items for collection, which each treated as owned by the other, and the credit of the items as received in an account of the sender and periodical settlement of the balances of account. When the forwarding bank failed, it notified the collecting bank that certain items then held for collection belonged to the New England bank. In a suit by the latter against Metropolis bank the defense was that at the date of the forwarding bank's failure there was due from it to the Metropolis bank more than the amount claimed. The defense was held good, this Court saying:

" We do not perceive any difference in principal between an advance of money and a balance suffered to remain upon the faith of these mutual dealings. In the one case as well as the other, credit is given upon the paper deposited or expected to be transmitted in the usual course of the transactions between the parties."

But here we have no credit extended by the St. Petersburg bank to the Clearwater bank on the faith of the checks forwarded for collection, and no mutual deposit

accounts, but a mere agency evidenced by a collection letter requiring collection and remittance. The fact that no credit was extended to the forwarding bank by the collecting bank, leaves it open to the depositor to assert his claim against the latter even though it had no notice that the relation between the depositor and the forwarding bank was one merely of agency. See *Sweeny* v. *Easter*, 1 Wall. 166; *Beaver Boards Cos.* v. *Imbrie & Co.*, 287 Fed. 158, 163.

The respondent was not entitled to set off an asserted cause of action in its own right based on the drafts drawn by the petitioner. The suggestion that the petitioner's demand was for the amount of checks the Clearwater bank had collected and failed to remit is beside the point. If the petitioner was for that or any other reason not entitled to sue in its own right, the fact would only be a further reason for denying the set-off.

The judgment must be *Reversed.*

MR. JUSTICE STONE, dissenting.

I think the judgment should be affirmed.

The case was tried upon the pleadings alone, and we are asked to determine an important question of law on only a partial presentation of the facts upon which its correct solution depends. Upon the facts disclosed, it would seem that the petitioner could not rightly defeat respondent's counterclaim by setting up that the drafts, which are the subject of it, are held by the Clearwater bank upon an agency in behalf of some of its depositors which they are not bound and have not chosen to assert. But even if that could properly be allowed, the burden rests on petitioner to show that the agency of the Clearwater bank created by the deposit of the items for collection, was continued with respect to the drafts which are the subject of the counterclaim, so that they were held

by the collecting bank as agent, not as owner. This the petitioner has failed to do.

From the pleadings it appears that the checks were deposited with the Clearwater bank by its customers, in the usual course, for collection, and were forwarded by it, in turn, to the St. Petersburg bank for collection; that the St. Petersburg bank collected the checks and paid the amount of the collection to the Clearwater bank by the drafts in question, made payable to its order. The two banks had each, for a long time, been sending drafts and checks to the other for collection and remittance, and the demand of the St. Petersburg bank, to which the counterclaim was interposed, was for an amount similarly due for items which had been collected for it by the Clearwater bank. It is not shown what credits were given by the Clearwater bank to the depositors for the checks when received, or that any of them were restrictively endorsed, or that in the transactions between the two banks either appeared to the other to be acting otherwise than as owner of the checks which it forwarded for collection. See *Douglas* v. *Federal Reserve Bank,* 271 U.S. 489. On the argument it was conceded that all were endorsed without restriction. There is no allegation that the Clearwater bank ever held the drafts, received from the St. Petersburg bank, as agent for its depositors, and none that the depositors ever asserted such an agency, or that they have made any claim to the drafts. Whether or not, in the usual course of business, it credited its depositors with the amount of the drafts on their receipt is not revealed.

The authority and duty of the Clearwater bank, as an agent for collection, was to receive legal tender in payment of the collection items, and nothing else. In receiving and retaining the drafts made payable to its own order, without designating the bank as agent, it took

them, not as agent, but for its own account. By taking them in payment it discharged the drawers of the collection items. Having thus precluded collection in legal tender, it at once became the bank's duty to credit its depositors with the items collected. *Federal Reserve Bank* v. *Malloy*, 264 U.S. 160, 165. By thus crediting the drafts it would have performed fully its duty as a collecting agent, for such a credit was all that was expected or could have been required if the collection had been made in legal tender. In either case the agency would then have come to an end beyond recall, the bank would have become a debtor to its depositors and the unqualified owner of the drafts which it had accepted in payment of the collections. See *Commercial Bank* v. *Armstrong*, 148 U.S. 50, 58; *Marine Bank* v. *Fulton Bank*, 2 Wall. 252; *Planters' Bank* v. *Union Bank*, 16 Wall. 483, 501; *Phoenix Bank* v. *Risley*, 111 U.S. 125; *Burton* v. *United States*, 196 U.S. 283, 297; *Douglas* v. *Federal Reserve Bank*, *supra*. There is no presumption, even under the Florida statute, that an agency of a bank to collect paper for its depositors survives the receipt by it of drafts in payment of the collection. Its survival necessarily depends on special circumstances not here disclosed. It cannot be presumed, in the absence of appropriate allegations or proof, that the depositors have claimed any ownership in the drafts or that, in the absence of such claim, the Clearwater bank did not, as it was legally bound to do, credit its depositors with the amount of the drafts on or after their receipt, or that it afterward occupied any relationship to its depositors other than that of debtor. There is thus a failure to allege directly, or by any necessary inference, the essential facts on which the petitioner's case depends, to show that the depositors of the Clearwater bank have any right to treat the drafts in its hands as their property.

But even if we are to say, on this record, that the depositors were entitled to claim ownership of the drafts in the hands of the Clearwater bank, they have not done so, and the St. Petersburg bank may not assert for them an interest in the drafts which they are not bound to assert, and have never claimed, for themselves. Unless *Federal Reserve Bank* v. *Malloy, supra,* on which the opinion of the Court relies, is to be overruled, neither the St. Petersburg bank nor the Clearwater bank could treat the depositors of the latter as owners of the drafts, without their consent. In that case, which arose under the statute of Florida involved in the present case, the bank had received paper restrictively endorsed for collection from another bank, which had received it from its customer. In turn it forwarded the paper to another bank for collection, from which it took a draft, payable to its own order, in payment of the collection item. This Court held that the bank received the paper as agent to collect it, but that in receiving the draft as payment instead of legal tender, the forwarding bank acted outside its agency. Hence it could not treat the owner of the paper sent for collection as the owner of the draft which it had thus wrongfully received, without his consent or ratification. Here the rights of the Clearwater bank upon the drafts had accrued before the receivership of either bank. What their rights then were they continued to be unless they were altered by some act of its depositors. Ownership of the drafts was not in suspension. It had already been lodged in the Clearwater bank by its own unauthorized act. Some affirmative act of ratification or adoption was necessary by its customers before the wrongful act of the Clearwater bank could be relieved of its consequences and before the burden of ownership, acquired by it in its own right because without authority, could be transferred from it to its depositors. Allowance of the counterclaim

upon the drafts, like payment of them before such an act of adoption, obviously could not result in double liability of the St. Petersburg bank, since the payment or allowance would be made to the one entitled to receive it.

Other circumstances make the present case an even plainer one for denying to the petitioner any right to assert that the drafts, which the Clearwater bank received and is compelled to hold as owner, are held upon an agency. The two banks, as the court below pointed out, were mutual agents for collection. On the record we must take it that they dealt with each other as the owners of the collection items, which each bank received from the other without notice of the interest in them of the other's depositors for collection. In *Bank of the Metropolis* v. *New England Bank,* 1 How. 234, 6 How. 212, this Court laid down the rule that when banks mutually act as agents for collection, each for the other, and paper transmitted for collection appears on its face to be the property of the transmitting bank and remitted for its account, they are entitled to settle their mutual demands for items collected by striking a balance, no matter who the owner of the collected items may be. Each deals, and is entitled to deal, with the other in reliance upon the security of the paper, endorsed without restriction and transmitted or expected to be transmitted in the usual course of the transactions between them. See also *Reynes* v. *Dumont,* 130 U.S. 354, 392; *Joyce* v. *Auten,* 179 U.S. 591, 597. The application here of the principle involved would not seem to be affected by the fact that drafts drawn for balances due from the one bank to the other were sent daily, rather than weekly or monthly. Even though the depositors here might have asserted an ownership in the drafts, which nevertheless they did not assert, it would be a departure from this salutary principle to say that the St. Petersburg bank can deny to the

Clearwater bank the rights of ownership in the drafts which the latter cannot itself deny.

Not only has petitioner failed to sustain the burden of showing that the depositors of the Clearwater bank, or any of them, have asked or consented to be treated as owners of the drafts, or otherwise adopted the act of the Clearwater bank, but it appears that it would be to their disadvantage to do so. We need not close our eyes to the obvious fact that the only possible advantage sought in behalf of the St. Petersburg bank by resistance to the counterclaim—the benefit of a distribution by the Clearwater bank to creditors larger than that of the St. Petersburg bank—is identical with the advantage which the depositors will retain by treating the Clearwater bank as their debtor, instead of asserting ownership in the unpaid drafts. In the circumstances, to speak of the Clearwater bank as suing upon its counterclaim as an agent and as not bearing the burden of ownership, is to speak in terms of legal fiction, not of reality. Notwithstanding our judgment denying to the Clearwater bank the right to counterclaim upon the drafts because the ownership of them is not in it but in its depositors, the depositors, if they have not already done so, are free to prove their claim against the Clearwater bank as a debtor, because they have never become owners of the drafts. The Clearwater bank, then, has no choice but to bear the burdens of ownership of the drafts, which it has received and retains as owner. It should equally be entitled to the benefits. These include the right to set up the drafts as a counterclaim to its indebtedness to the St. Petersburg bank.