## UNITED STATES v. CLAWSON.

### No. 3988.

District Court, D. Wyoming.

Dec. 9, 1935.

it seems to be, that the defendant as one of such trustees held the mortgages at the time the alleged false statements are claimed to have been made to the government agency.

E. C. Raymond, Sp. Asst. U. S. Atty., of Newcastle, Wyo., and John C. Pickett, Asst. U. S. Atty., of Cheyenne, Wyo.

G. R. Hagens, of Casper, Wyo., and C. R. Ellery, of Cheyenne, Wyo., for defendant.

**KENNEDY, District Judge.**

Defendant was indicted by a grand jury for violation of title 12, § 1467 (a), U.S.C.A., in making false statements for the purpose of influencing action of the Home Owners' Loan Corporation in the matter of loans. The indictment is in the form of eleven counts which relate to different loans in connection with which the alleged false statements were made, and all counts are similar with respect to the nature of the various charges. The substance of the charges is, that the defendant as a trustee holding certain mortgages made answer on a form provided by the HOLC and in a questionnaire by overstating the amount due upon the respective mortgages which the HOLC was being sought to take over. After the indictment was returned, the defendant moved for a bill of particulars setting forth in greater particularity the manner in which it is claimed in the indictment the overstatement of the amount due upon the mortgages had been determined. This motion was sustained, and in due time a bill of particulars was filed by the government setting forth with greater particularity the details of the charges set out in the indictment. The defendant then interposed his demurrer and motion to quash the indictment upon various grounds. The demurrer and motion were argued, trial briefs submitted, and the matter in this form is now before the court for consideration.

The transactions in connection with the mortgages here in question leading up to the immediate acts upon which the indictment is based are manifold and varied, involving a process of assignments from an original building and loan association to trustees, through another organized building and loan association and back into the hands of the trustees, which process it is probably unnecessary to follow in this discussion, if it be conceded, as

Numerous points are presented under the demurrer and motion, but only one or two of these which go to the substance of the charge will be considered in this inquiry. No challenge on behalf of the government seems to be made over the fact that the demurrer and motion are directed to the indictment as amplified by the bill of particulars, so that this point need not be further considered, especially inasmuch as such procedure has been recognized as proper by some courts. United States v. Flores (D.C.) 3 F.Supp. 134; Singer v. United States (C.C.A.3) 58 F.(2d) 74.

One of the points raised is that, while the indictment alleges that the defendant in his capacity as a trustee for a building and loan association made the false statements in question, yet the bill of particulars shows that the defendant and one Charles Anda were cotrustees holding the mortgages as such at the time the defendant made the alleged false statements to the HOLC in connection with the loans. It is argued that this is a fatal variance because of the fact that the trusteeship was a distinct entity and that the defendant alone was not a trustee in the strict interpretation of that term. Cases are cited in support of this contention. The logic of these cases is to the effect that in an indictment upon which a person is prosecuted for a criminal offense the indictment must be specific in regard to all the essential allegations necessary to constitute the crime, and that, if there is a substantial variance in this respect, it is fatal. Some of the cases which illustrate the principle are: Naftzger v. United States (C.C.A.8) 200 F. 494; Fontana v. United States (C.C.A.8) 262 F. 283. In the light of these well-defined principles of law invoking the interpretation of indictments, there would seem to be grave doubt in the case at bar as to whether an allegation in the indictment that the defendant as a trustee made certain representations is sufficient when as a matter of fact he was only a single member of a trusteeship which in law is a separate and distinct entity from an individual or a single trustee, which latter fact the indictment purports to allege.

180

We may assume, however, that this may be considered as a more or less technical objection to the substance of the charge laid in the indictment and proceed to the consideration of other points raised.

It has hereinbefore been stated that the substance of the charge in the various counts is that the defendant overstated the amounts then due upon the various obligations represented by the mortgages which were in the hands of the defendant as one of the trustees and which the HOLC was being sought to take over for the purpose of readjusting and revamping the loans. For example, in the eighth count of the indictment it is charged in connection with the mortgage of one Mabel V. Wilson, as being represented by the defendant that the amount due and owing was $1,971.39, while in truth and in fact the amount due and owing was a lesser sum, to wit, $1,808.83, from which it would appear that there was a false overstatement of the amount due in the sum of $162.56. In the bill of particulars it is affirmatively shown that this discrepancy is made up of a so-called stock credit of $124.41 and a budget credit of $38.15.

■ Referring to the mortgages set forth in the bill of particulars which were the instruments to be assigned by the trustees to the HOLC, there was pledged as additional security for the loan certain stock in the building and loan association upon which the mortgagor was paying into the association a certain amount every month and which was carried as what has been described as a stock credit to the borrower; and further by the terms of the mortgage that there was to be paid in by the borrower or mortgagor a certain amount per month in advance to cover accruing taxes, assessments, and insurance, which fund should be kept and used for such particular purpose, any overplus therefrom to be returned to the mortgagor. This fund was kept in what has hereinbefore been described as a budget credit. And it was further provided that upon default such pledged stock might be canceled and the funds accruing therefrom applied to the indebtedness after allowing a credit of the net voluntary withdrawal value of the pledged stock. The bill of particulars shows that the books of the trustee indicate that the items carried as a stock credit and a budget credit were not cleared of these items until December 30, 1933, in the count under consideration, whereas the alleged statement in regard to the indebtedness was made November 16, 1933, more than six weeks previous.

By this analysis it must affirmatively appear that, at the time the alleged false statement was made, the items appearing in the stock credit and the budget credit accounts had not been applied toward the liquidation of the mortgage debt, nor does it necessarily appear that these items should have been so applied, except perhaps through some arrangement with the mortgagor or under a foreclosure of the mortgage where the specific amount could be ascertained and determined in a manner which would be binding upon both parties. As a matter of fact, in law it appears that these were separate and distinct items of account independent of the amounts due upon the mortgages. In this respect the authorities say that, in order to constitute a cross-demand, there must not be any lack of mutuality, and that debts to be used as set-offs must be due to and from the same persons in the same capacity. Dakin v. Bayly, 290 U.S. 143, 54 S.Ct. 113, 78 L.Ed. 229, 90 A.L.R. 999; 7 C.J. 745; Petersen v. Lyders, 139 Cal.App. 303, 33 P.(2d) 1030.

■ It is my view that these stock and budget accounts were not true set-off debts as against the mortgage indebtedness which the trustees might have applied at will or, even if they had the right to so apply them, which is extremely doubtful so far as the budget account is concerned, they had not been so applied at the time the alleged statement was made to the HOLC. In these circumstances it can scarcely be said that there was such a statement as would constitute a criminal offense under the indictment based upon the statute invoked in this case. There can be little doubt that under the terms of the mortgages involved here the HOLC, as assignee, is entitled to recover any amount in the hands of the trustees which in law and equity should be applied to the reduction of the mortgage debts, and these amounts might be paid upon demand or recovered upon proper suit brought. As a matter of fact, when this matter was presented in argument, the court suggested this manner of disposing of the controversy, and counsel for the defendant in open court volunteered

to pay such amounts as upon examination might be found to be due and in his hands growing out of the stock and budget credits; but nevertheless the government seems to have been more interested in pursuing this criminal prosecution. It would be incumbent upon the government in a prosecution of this character before a conviction might be had to prove beyond a reasonable doubt, not only that these separate accounts should have been applied to a reduction of the mortgage debts, but that there was no other reasonable hypothesis upon which the defendant might have based a contention that they were not so applicable at the time the alleged false statements were made. As a matter of law, it can scarcely be conceived how proofs in accordance with the government's bill of particulars at the trial would justify the court in sending the case to the jury; and in this view it is better for all concerned that the matter should now be disposed of by sustaining the demurrer and motion to quash.

Other indictments, one against R. B. Carpenter, No. 3989, Crim., and a joint indictment against this defendant and Carpenter, No. 3990, Crim., involve the same propositions, and by consent of counsel have been considered together and should be disposed of in the same manner.

An order may be entered accordingly sustaining the demurrers and motions to quash in all cases and discharging the defendants.