## GRAND RAPIDS COMMUNITY CHEST v. GRAND RAPIDS NAT. BANK et al.
### No. 2729.

District Court, W. D. Michigan, S. D.
July 27, 1936.

Glenwood C. Fuller, of Grand Rapids, Mich., for plaintiff.

James T. McAllister, of Grand Rapids, Mich., for defendants Grand Rapids Nat. Bank and McCurdy, receiver.

Mason, Alexander, McCaslin & Cholette, of Grand Rapids, Mich., for defendants Grand Rapids Sav. Bank and McCaslin, receiver.

John M. Dunham, of Grand Rapids, Mich., for defendants American Home Sec. Bank and Lawrence, receiver.

Warner, Norcross & Judd, of Grand Rapids, Mich., for defendant Old Kent Bank.

### Findings of Fact.

RAYMOND, District Judge.

1. The plaintiff, Grand Rapids Community Chest, is a non-profit sharing corporation organized to raise and distribute money to and to supervise the activities and work of affiliated associations and non-profit corporations known as the member agencies of the chest, all of which are either associations or non-profit corporations engaged in different types of charitable, philanthropic, and social service work in the metropolitan area of Grand Rapids, Mich.

2. On August 8, 1932, the Grand Rapids National Bank was a national banking corporation carrying on and conducting a banking business in the city of Grand Rapids, Mich., and on that day it made a loan to the Grand Rapids Community Chest of $35,000 and received the note of the Grand Rapids Community Chest for this amount endorsed by its directors.

3. When this loan was made, the Old Kent Bank, the Grand Rapids Savings Bank, and the American Home Security Bank turned over to the Grand Rapids National Bank cash in the following amounts:

| | |
|---|---|
| Old Kent Bank | $13,370.00 |
| Grand Rapids Savings Bank | 8,564.50 |
| American Home Security Bank | 3,703.00 |
| Grand Rapids National Bank | 9,362.50 |
| Total | $35,000.00 |

The Grand Rapids National Bank thereupon gave to each of the banks a certificate of interest showing the amount that each bank contributed to the loan, and that the banks so contributing should receive from the Grand Rapids National Bank the full amounts of their contributions and interest thereon at the rate of 6 per cent. per annum.

4. Each time payments on the loan were made to the Grand Rapids National Bank by the Grand Rapids Community Chest, the Grand Rapids National Bank remitted to each one of the banks its proportionate share of the amount which it had contributed toward the making of the loan, with accrued interest. The Grand Rapids Community Chest had no knowledge of the arrangement among the banks, and dealt entirely with the Grand Rapids National Bank on the basis that the loan made by it to the Grand Rapids Community Chest was a loan by the Grand Rapids National Bank.

5. In October, 1932, the plaintiff conducted a campaign for funds for the support of itself and its member agencies during the fiscal year beginning November 1, 1932, and ending October 31, 1933. In this campaign, plaintiff obtained about 16,500 pledges for a total of something over $260,000. Included in these was a pledge dated October 6, 1932, in the amount of $12,000, by the Grand Rapids Clearing House Association, reading as follows:

"The Community Chest:

"The Grand Rapids Clearing House Association has voted a donation of $12,000.00 to the Community Chest, payable after January 1, 1933 and prior to November 1, 1933.

"Yours very truly,
"Grand Rapids Clearing House Ass'n,
"By Frank G. Deane, Secy."

The Grand Rapids Clearing House Association was an unincorporated association, composed of the defendants, Old Kent Bank, Grand Rapids National Bank, Grand Rapids Savings Bank, and American Home Security Bank; also, Grand Rapids Trust Company and Michigan Trust Company. By action taken at the same meeting at which the pledge was authorized, the defendant banks and the trust companies agreed that as among themselves the liability for the pledge in question should be prorated as follows:

| | |
|---|---|
| Old Kent Bank | 35.170% |
| Grand Rapids National Bank | 21.277% |
| Grand Rapids Savings Bank | 20.414% |
| American Home Security Bank | 6.784% |
| Michigan Trust Company | 9.813% |
| Grand Rapids Trust Company | 6.542% |
| Total | 100 % |

6. During the month of September, 1932, plaintiff made three equal payments

aggregating the sum of $15,000 plus interest on its $35,000 note, thereby reducing the unpaid balance of the note to $20,000. After the $12,000 clearing house pledge had been made on October 6, 1932, and on November 4, 1932, the defendant banks, at a meeting of the clearing house held on the latter date, entered into an agreement among themselves that plaintiff should pay an additional $8,000 upon the $35,000 note, thereby reducing the balance of the loan to $12,000, and thereupon that said unpaid balance should be paid by application of clearing house payments to be made on the $12,000 clearing house pledge to plaintiff. This arrangement was given effect on November 22, 1932, by plaintiff's paying $8,000 to defendant Grand Rapids National Bank, by plaintiff's giving a new unindorsed demand 6 per cent. note to defendant Grand Rapids National Bank, and by plaintiff's assigning and delivering the $12,000 clearing house pledge to defendant Grand Rapids National Bank as collateral security for the payment of the new $12,000 note.

7. On January 3, 1933, the clearing house paid $3,000 to Grand Rapids National Bank on account of the clearing house pledge. On the same date plaintiff paid Grand Rapids National Bank $84 for the interest due on the $12,000 note up to that date. The money with which to pay the $3,000 was obtained by the clearing house by its drawing drafts on its members for their pro rata parts of that payment. Upon receipt of the $3,084, Grand Rapids National Bank made distribution of the money so received in accordance with the certificates of interest. By reason of such payments of January 3, 1933, the unpaid balance of the plaintiff's $12,000 note was reduced to $9,000 and the unpaid balance of the clearing house pledge was also reduced to $9,000.

8. On or about February 14, 1933, all of the defendant banks were closed by the banking holiday proclamation by the Governor of Michigan.

9. That prior to the banking holiday, the defendant Grand Rapids National Bank was a banking institution organized under the national banking laws; that after the banking holiday it did not reopen for unrestricted business; and that some time thereafter a conservator was appointed by the Comptroller of the Currency, and at a later time a receiver was appointed by the Comptroller of the Currency, and said bank is now in process of liquidation.

10. Prior to said banking holiday, the defendant American Home Security Bank was a bank organized under the laws of the state of Michigan with its offices in Grand Rapids; that after the said bank was closed by virtue of said banking holiday, it never opened for unrestricted business, and during the month of March, 1933, Howard C. Lawrence was appointed conservator by the state banking commissioner, and remained as such conservator until October 2, 1933, when he was appointed receiver of said bank by the state banking commissioner, and said bank is now in the process of liquidation and a 100 per cent. stock assessment has been levied against the stockholders by the state banking commissioner. On March 31, 1936, an order was entered in this cause substituting John G. Emery, receiver of said bank, as successor to Howard C. Lawrence.

11. Prior to said banking holiday, the defendant Grand Rapids Savings Bank was a bank organized under the laws of the state of Michigan with its offices in Grand Rapids; that after the said bank was closed by virtue of said banking holiday, it never opened for unrestricted business, and during the month of April, 1933, William R. McCaslin was appointed conservator by the state banking commissioner, acting under Act No. 32 of the Public Acts of 1933, and remained as such conservator until September 11, 1933, when he was appointed receiver of said bank by the state banking commissioner, and said bank is now in process of liquidation, and a 100 per cent. stock assessment has been levied against the stockholders by the state banking commissioner.

12. Subsequent to such closing but prior to the commencement of this suit, defendant Old Kent Bank reopened and has since been and now is engaged in banking business as a solvent institution.

13. On August 23, 1933, the Comptroller of the Currency authorized the conservator of the Grand Rapids National Bank to make a payment of 50 per cent. to the depositors on all of their impounded accounts. The Grand Rapids Community Chest then had on deposit in the Grand Rapids National Bank the sum of $32,440.53, and there was still due to the Grand Rapids National Bank, on the Grand Rapids Community Chest note, the sum of $9,-

313.50, and on August 30, 1933, the conservator offset the note of $9,313.50 against the commercial account of the Grand Rapids Community Chest.

14. Such offset was made without the consent or agreement of plaintiff but on the sole responsibility of the conservator as the then legally constituted representative of the defendant Grand Rapids National Bank. After such offset had been made, the plaintiff's $12,000 note, marked, "Paid," and the $12,000 clearing house pledge, and the assignment of such pledge from plaintiff to Grand Rapids National Bank were surrendered and delivered to plaintiff. When the foregoing offset was made, the conservator, acting on behalf of Grand Rapids National Bank, issued conservator's checks to the other defendant banks, and retained for said Grand Rapids National Bank, in accordance with the certificates of interest theretofore issued for them, pro rata parts of said fund of $9,313.50, as follows:

| | |
|---|---|
| Old Kent Bank | $3,557.76 |
| Grand Rapids Savings Bank | 2,279.01 |
| Grand Rapids National Bank | 2,491.36 |
| American Home Security Bank | 985.50 |
| Total | $9,313.63 |

The conservator's checks issued to said defendant banks were never paid, however, because payment on such checks was stopped.

15. To obtain their proportionate shares of the amount of this offset, each one of the banks filed a claim against the Grand Rapids National Bank for the amount of its respective share, evidenced by its certificate of interest, and said claims were duly allowed as common claims, and 60 per cent. of the amount has been paid thereon.

16. The Grand Rapids Community Chest also filed its claim against the Grand Rapids National Bank for the balance of its account, including as set-offs the $9,000 note and interest, and received 50 per cent. of its claim.

17. The Old Kent Bank has paid to the plaintiff all sums received as dividends upon its claim against the Grand Rapids National Bank and expresses its intention and willingness so to do in regard to future dividends. The other banks have retained the dividends received upon their respective claims.

18. The bill of complaint alleges full payment by the Community Chest of the balance of $9,000 due on its note of November 22, 1932, by the prior contributions of the several banks to the fund constituting the $12,000 loan; that the taking of plaintiff's funds for offset and payment of said note was wrongful misappropriation of plaintiff's funds; that the payment of dividends on the claims of the other defendant banks was wrongful; and that said defendant banks hold all dividends received as trustees for plaintiff who is entitled to an accounting therefor.

### Conclusions of Law.

1. The note given to the Grand Rapids National Bank by the Community Chest November 22, 1932, was not paid, by set-off or otherwise, prior to the closing of defendant banks about February 14, 1933. It still subsisted as a legal obligation in August, 1933.

2. The conservator of the Grand Rapids National Bank had not only the right but the duty to offset the balance due upon the note of November 22, 1932, against the deposit of the Community Chest before payment of dividends.

3. Plaintiff is not entitled to an accounting to the amount of dividends received from the Grand Rapids National Bank by the Old Kent Bank or by the receivers of the Grand Rapids Savings Bank and the American Home Security Bank upon their claims evidenced by the participation certificates.

4. Plaintiff is not entitled to an accounting by the receivers of the Grand Rapids National Bank, the Grand Rapids Savings Bank, and the American Home Security Bank for the balance due upon their pro rata shares of the clearing house pledge; such subscriptions being invalid as against depositors and other creditors of said banks.

5. Plaintiff's claim, if any, against the Old Kent Bank on the Clearing House pledge, is not enforceable in this proceeding in equity for an accounting.

6. A decree will be entered dismissing the bill of complaint.

### Opinion.

The controlling facts in this case are not in dispute and with few exceptions are sufficiently set forth in the accompanying findings. While a considerable number of issues are raised in the pleadings and briefs, only two of them need be discussed.

Plaintiff contends that the clearing house pledge was primarily the obligation of the defendant banks themselves, and that it was accepted in payment of the balance due on the note of $12,000. It is urged that the completion of the offset was then entirely within the control of the Grand Rapids National Bank acting for itself and as agent for the other defendant banks, and that as between the plaintiff and the defendant banks, the offset was complete by reason of an agreement of November 4, 1932, which appears in the clearing house minutes of that date. It is contended that on and before January 3, 1933, the pledge was, in legal effect, fully paid by the contributions to the loan to the Community Chest which had been made by each of the banks in the name of the Grand Rapids National Bank.

On the other hand, the receivers of the Grand Rapids National Bank, the Grand Rapids Savings Bank, and the American Home Security Bank insist that the banks participated in the Grand Rapids National Bank loan to the chest by loans of pro rata parts thereof to the Grand Rapids National Bank—not to the Community Chest through the Grand Rapids National Bank as its agent or trustee—and that the pro rata liability of the banks on the clearing house pledge was not paid in advance by the banks' pro rata participation in the Grand Rapids National Bank loan to the Community Chest. They also urge that the clearing house pledge, if otherwise legal, is ultra vires. The Old Kent Bank acknowledges its liability upon the pledge, but only to the extent of dividends heretofore received or which it may hereafter receive upon its claim upon its certificate of interest in the loan in question allowed against the receiver of the Grand Rapids National Bank.

Plaintiff's claim that its note of $12,000 had been paid prior to the exercise by the receiver of the Grand Rapids National Bank of its alleged right of set-off is based largely upon the action of the Grand Rapids Clearing House on November 4, 1932, evidenced by minutes of that date, and upon a letter written by the secretary of the clearing house long after the date of the bank holiday. The latter could not affect the legal situation except as evidence to aid in ascertaining the intent of the parties. The principle is well settled that the right to set-off is governed by the state of things existing at the moment of insolvency. See Dakin v. Bayly, 290 U.S. 143, 54 S.Ct. 113, 78 L.Ed. 229, 90 A.L.R. 999; Scott v. Armstrong, 146 U.S. 499, 13 S.Ct. 148, 36 L.Ed. 1059. The minutes read: "The matter of the Grand Rapids Community Chest loan now standing at $20,000. was brought up. It was agreed that $8,000. should be paid on this loan and the balance of $12,000. to be paid by the application of Clearing House payments on their pledge of $12,000. to the Community Chest. Carried." To interpret this to mean that the contributions which had been made to the loan several months before were intended as payment of the pledge belies the minutes as recorded. The effect of such interpretation would be to substitute the words "contributions to the loan of $35,000" for the words "payments on their pledge of $12,000." Unquestionably the intention was that when the clearing house, by receipts from the various contributing banks, actually paid installments upon the pledge, those installments should be applied in the reduction of the pledge and would in turn reduce the loan. This is precisely what was done when the first quarterly payment of $3,000 was made on the pledge on January 3, 1933. Doubtless, had the banks not closed, this course would have been followed with reference to subsequent payments on the pledge. All who participated in the transactions of January 3, 1933, recognized that the payments by the contributing banks through the clearing house were to be applied upon the pledge which the Grand Rapids National Bank then held as collateral security to the note of the Community Chest, and that the note should then be reduced in the same amount; and that the amounts so received by the Grand Rapids National Bank on the note should be distributed pro rata to the banks in repayment of the amounts advanced by them (evidenced by the certificates of participation) for the loan in August, 1932. The continued existence of the note was plainly recognized by plaintiff on January 3, 1933, by payment of $84 interest upon the note. Obviously, the plan and purpose of all parties was that, from time to time, as the subscription was reduced by payments thereon by the clearing house, the proceeds thereof should reduce the note accordingly. No circumstance connected with the transaction of January 3, 1933, indicates that any party thereto believed that the note had been previously paid. The retention by the several banks of their participation certificates is further corrobora-

tive evidence of the intention of the parties. There was then a balance of $9,000 due the Grand Rapids National Bank upon a loan to the Community Chest; that bank was obligated to the Old Kent Bank, the Grand Rapids Savings Bank, and the American Home Security Bank upon participation certificates representing the amounts contributed by them for the loan; and there was also a subscription to the Community Chest in the sum of $9,000 upon which the clearing house (or the banks) was obligated, provided the subscription was within the powers of the contributing banks. There is no escape from the conclusion that the note was still in existence as a legal obligation of the Community Chest at the time of the closing of the banks, and that the conservator of the Grand Rapids National Bank had not only the right but the duty to offset the note against the deposit of the Community Chest before payment of dividends. Not only do the contemporaneous acts of the parties confirm this conclusion, but the conduct of the plaintiff at the time of filing its claim against the Grand Rapids National Bank clearly indicates a like understanding. The claim, filed August 30, 1933, contains the following:

Balance of Account March 6,
   1933 ...................... $32,440.53
Less set-off note.............. 9,313.50
                                 ─────────
   Net amount of claim...... $23,127.03

Upon this net amount claimed, the Community Chest collected a dividend of 50 per cent. Thereupon the subscription which had been previously held as collateral was returned to plaintiff together with the note which had been paid by the set-off. There is nothing to indicate that the parties understood that the note had been discharged or reduced by payments upon the subscription by the banks which had joined in the clearing house pledge.

■ Plaintiff urges, however, that even if there was no prepayment of the note, claims should be allowed by this court against the four banks or their respective receivers for the pro rata parts of the unpaid balance of the pledge. This contention loses sight of the fact that the claims filed by the banks are for repayment to them of the balances due them respectively upon the participating certificates issued in August, 1932, when the loan to the Community Chest was first made. The banks have not received dividends upon a pledge or pledges made to the Community Chest, but upon the participating certificates. Whatever liabilities to the Community Chest may exist arise from individual liability upon the pledge made through the clearing house as agent and not for the amounts received by them respectively upon their claims.

■ Defendant receivers urge that in any event the subscriptions were ultra vires and unenforceable upon any theory. Plaintiff contends, on the contrary, that: "a corporation, like an individual, is a member of the society in which it exists and from which it derives its livelihood; that whatever contributes to the welfare of the community for peace and social security, contributes also to the welfare of the resident corporations; (and) that within reasonable limits a corporation has the same right and power as an individual to contribute to the support of worthy public community welfare projects." To sustain the contention that the subscription under consideration is an enforceable legal obligation against the banks, plaintiff relies upon the following authorities: Heinz v. National Bank of Commerce (C.C.A.) 237 F. 942; Armstrong Cork Co. v. H. A. Meldrum Co. (D.C.) 285 F. 58; Steinway v. Steinway & Sons, 17 Misc. 43, 40 N.Y.S. 718, 720; Mobile Gas Co. v. Patterson (D. C.) 293 F. 208; Carey v. Corporation Commission, 168 Okl. 487, 33 P.(2d) 788. These cases have been examined, but are found not to be applicable to cases like the present. Without determining the right of a bank to make subscriptions for community welfare projects of various kinds which might be enforced so long as such subscriptions are to be paid from the surplus and undivided profits and the burden therefore borne by the stockholders (as it undoubtedly is in usual circumstances), it would be inequitable and unjust to uphold the validity of such subscriptions when it becomes obvious that they can be paid only at the expense of depositors and other creditors. No case goes to the extent of sustaining such vicarious generosity as would be sanctioned by permitting subscriptions by banks for charitable purposes to be paid by their depositors. Subscriptions of this type, if valid, must be considered as conditioned upon continued solvency of the bank. Consideration of the authorities cited and others brings conviction that during the continuance of the bank's business

in usual course, the status of pledges as legal obligations, so long as the promise remains executory, is precarious. No authority has been cited, and careful search reveals none, in which such obligations have been recognized as enforceable against the assets of a closed bank where insolvency intervened prior to payment.

So far as the claim against the Old Kent Bank is concerned, for reasons already indicated such legal rights as can be based upon the pledge are not enforceable in this proceeding.

A decree will therefore be entered dismissing the bill of complaint.