**UNGERLEIDER et al. v. CITIZENS COMMERCIAL & SAVINGS BANK OF FLINT, MICH.**

**No. 7725.**

Circuit Court of Appeals, Sixth Circuit.

June 9, 1939.

Leo Mellen, of Detroit, Mich. (Leo Mellen and Freud, Markus & Stutz, all of Detroit, Mich., on the brief), for appellants.

Edward S. Clark, Jr., of Bay City, Mich. (Homer J. McBride, of Flint, Mich., and Clark & Henry, of Bay City, Mich., on the brief), for appellee.

Before HICKS, SIMONS, and HAMILTON, Circuit Judges.

HICKS, Circuit Judge.

Samuel Ungerleider & Company of New York City, was a stock brokerage partnership composed of seven individuals. Appellee was a bank located at Flint, Michigan. Appellants brought this action in assumpsit but by an amendment it became an action for damages for negligence. Following purported sales by them of certain

securities to one Thomas R. Buckham of Flint, appellants drew six sight drafts therefor on Buckham totalling $399,189.95, attached the securities thereto and deposited them with the Chase National Bank, receiving credit therefor. Chase transmitted the drafts to appellee for collection and remittance. Buckham failed to pay and the drafts and securities were returned to Chase and taken up by appellants. Appellants claim that appellee failed to give seasonable notice of non-payment and that this alleged negligence resulted in a loss in the value of the securities between the date when the notice should have been received and when it was actually received.

Both parties moved for a directed verdict and the court upon finding that there was no negligence and no damage, dismissed the action.

We may assume that appellants and Chase contracted with reference to the New York Negotiable Instruments Law, Consol. Laws N.Y. c. 38, and that Chase was agent for appellants in forwarding the drafts to appellee for collection and that appellants had a right of action against appellee as sub-agent, for negligence in collection. Dakin v. Bayly, 290 U.S. 143, 54 S.Ct. 113, 78 L.Ed. 229, 90 A.L.R. 999; Federal Reserve Bank of Richmond v. Malloy et al., 264 U.S. 160, 44 S. Ct. 296, 68 L.Ed. 617, 31 A.L.R. 1261; First Huntington Nat. Bank v. Salt Lick Deposit Bank, 6 Cir., 58 F.2d 553; Old Company's Lehigh v. Meeker, 2 Cir., 71 F.2d 280; and In re Kountze Bros. et al., 2 Cir., 79 F.2d 98, 102 A.L.R. 367.

The question for review is whether the evidence required a finding for appellants as a matter of law. Hunt v. Standard Brands, Inc., 6 Cir., 72 F.2d 822.

We are confronted with the unsatisfactory nature of the evidence. The six drafts involved were all drawn, presented and returned in May, 1929. The suit was not brought until June 14, 1932; and the trial was had more than two years later. In the interim the drafts were lost, but the amounts thereof, the securities attached to each, and the dates of their receipt by appellee and of their return to Chase are not in dispute.

However, the form of the drafts is controverted. Appellants attached purported copies to their amended declaration as Exhibits "A," "B," "C," "D," "E" and "F." We copy Exhibit "A" which is identical with the others, except for its date,

the amount and the statement of securities attached:

"Exhibit 'A'

"No Protest

"Samuel Ungerleider & Co.

"Members New York Stock Exchange
"50 Broadway

"If not paid on ―――― add interest at $―――― per day to date of payment.

"New York, N. Y., May 6, 1929

"Wire Non-Payment "On Demand Pay to the Order of Chase National Bank of New York, N. Y. One Hundred Thirteen Thousand Five-Hundred Ninety-five and 19/100 Dollars $113,595.19

"Value Received and Charge to Account of

"To      Genesee Savings & Trust Co.
of Flint, Michigan

"A/C Thomas R. Buckham

"Securities Attached 1000 Radio
"Samuel Ungerleider & Co.

"By Leif Larsen

"Ship Thru―――― [Signed]"

The amounts of the other drafts as shown by the Exhibits were as follows: "B," $65,877.85; "C," $53,103.05; "D," $83,624.67; "E," $30,554.63; and "F," $52,434.56.

Larsen, Customer Delivery Clerk of appellants, who prepared the original drafts, testified from memory that the exhibits were exact copies. Coffey, Manager of the Transit Department of Chase at the time, testifying by deposition, stated that "our records" show that the original drafts contained the instruction "Wire Non-payment." The court excluded this testimony since the records were the better evidence.

Lichtum, employed by appellants in May, 1929, ordered the drafts drawn and saw them afterwards. From his records, he testified as to the amounts, the names of the drawee and the securities attached. From his memory, he testified that the drafts were prepared on the regular envelope form used by appellants and bore the legend, "Wire Non-payment."

Mellen, appellants' counsel, testified that in April, 1933, he interviewed Schumacher, Vice-President of appellee, in charge of commercial paper, and referred to copies of the drafts and that Schumacher said,— "That legend, 'Wire Non-payment' is on all out of town drafts and we always ignore it."

But appellants introduced Schumacher and Braden, Collection Teller of appellee, as its witnesses. Neither remembered that

there was anything unusual about the drafts, or that appellants used the envelope type. Schumacher testified that the securities were attached by clips to the drafts but neither could remember that the legend, "Wire Non-payment" appeared on them. Schumacher testified that in general practice special instructions as to Protest, Reporting, etc., were usually attached to the drafts by stickers. Schumacher recalled no conversation at all with Mellen.

The court refused to receive these "Exhibits" as exact copies of the original drafts and found "that the drafts did not contain the words 'Wire Non-payment.'" In view of the loss of the drafts, the delay in bringing suit, the failure of Coffey to produce the "records" from which he testified, and the uncertainty of appellants' own witnesses, Schumacher and Braden, and bearing in mind that the Judge saw many of the witnesses, heard them testify and observed their manner and demeanor, we find no grounds for upsetting the finding on this point. Aetna Ins. Co. of Hartford, Conn. v. Licking Valley Milling Co., 6 Cir., 19 F.2d 177, 179.

There is little uncertainty as to the dates the various drafts were received by appellee and presented for payment. The drafts represented by Exhibits "A" and "B" were received from Chase on May 8, 1929. Braden was uncertain whether they were presented for collection on that date or the next. He said it depended "on the time the mail came in." He testified that there was no such bank as "Genesee Savings & Trust Company" but writing into the drafts a non-existent drawee was of course no fault of appellee. However, Braden took the drafts to the "Genesee County Savings Bank," since there was no other bank or trust company in Flint having a similar name and "we understood they probably meant that bank."

When Braden presented these two drafts to the "Genesee Bank" payment was refused but Mr. Martin of that bank called his attention to the fact that Buckham's name was on the drafts. Braden explained that he had not noticed it because it was in an obscure place and not very noticeable. Appellants understood that even if the "Genesee Bank" had been the drawee it would not have paid the drafts without authorization by Buckham. It also understood that it was necessary for appellee to find Buckham because he was the man who was to pay. Braden made an attempt to

get in touch with Buckham, calling him on the telephone where he worked and at his home. He said: "I was not advised where Mr. Buckham was but just that he was out of town. I am positive that I tried to contact him every day because it was a large amount. * * *" But Braden was unable to locate Buckham until the following Monday, May 13, Buckham having been away that week-end. Braden testified: "We did not notify the Chase Bank that we had been unable to locate Mr. Buckham," nor of the fact that he was out of town, and that it was not customary to give such notices. Moreover, appellee knew that Buckham was employed in Flint and that he would probably return to his work on Monday morning. In the interim between May 8 and May 13 appellee received the draft represented by Exhibit "C" on May 9 and the three drafts represented by Exhibits "D," "E" and "F" on May 10. It did not present these drafts to the bank because it was obvious that such presentation would have been fruitless.

Appellants predicate negligence upon appellee's failure to return all the drafts and give notice of what had occurred before May 13. The question presented here is, whether the course pursued by appellee was reasonable. It was the duty of appellee to use due diligence in its effort to collect. Collection was the important thing and under the circumstances this took time. From the whole matter, which was one of fact, different persons might draw different conclusions and inferences. We think, therefore, that the question was one to be determined by the District Judge. He found in favor of appellee upon evidence which we regard as sufficient and his finding is conclusive here.

When Braden finally located Buckham on May 13 he told him of the existence of all six drafts. He testified that Buckham "was flabbergasted * * * he was astounded at this large amount of stock." Buckham refused to pay but said "he would get in touch with Ungerleider & Company right away in New York and let me know as soon as he could." Braden saw Buckham again either that afternoon or the next morning and was advised that he had phoned Ungerleider, had talked to some man there and "would let me know soon what they were going to do about it."

Buckham's testimony was,—"I first knew the drafts were in Flint for collection on the 13th of May. Mr. Braden, of the bank,

called me on the phone. I went over in about three quarters of an hour, or an hour. After I got there, I examined the drafts and talked to Mr. Braden about it. I told him that not all the securities were mine and I couldn't take up the drafts. I told him that I would get in touch with Mr. Ellis in New York of Ungerleider & Company, and I would advise him. I told him I would call Ellis long distance."

Buckham did telephone Ellis and told him that he could not pay the drafts. He then told Braden that he had communicated with Ellis and that the disposition of the return of the stocks would be taken care of by Ungerleider. Ellis was Manager of Ungerleider's Fifth Avenue Branch in New York and handled Buckham's account with which the drafts were connected.

Appellee did not then notify Chase or appellants of the non-payment; but on May 15 it received a telegram from Chase, —"Wire fate our collections" on the drafts represented by Exhibits "A," "B" and "C." There was no inquiry as to the other drafts. Appellee on May 16 replied by wire that the three drafts to which the inquiry related had not been paid and this reply was received on May 17.

On that date Chase again wired asking the fate of all six drafts to which appellee replied by wire on May 18 that none had been paid and this wire was not received until May 20, since the 19th was Sunday. Upon the following day, May 21, Chase wired to return all six drafts and they were returned on that date and re-delivered to appellants on May 23.

The question here is, whether appellee was negligent as a matter of law in delaying notice of non-payment of Exhibits "A," "B" and "C" from May 13 to May 16 and of the remaining drafts from May 13 to May 18. Here, again, the question is one of reasonableness or unreasonableness under the circumstances. It must be kept in mind that notice was not necessary to bind a third party, such as an endorser. The only purpose of notice was to give appellants an opportunity to resell the securities for its protection.

Appellee had no reason to question the good faith of Buckham's telephone message to Ellis that he could not pay. It had a right to presume that Ellis would communicate this information to his principal so long as there was nothing to rebut the presumption. It turned out that Ellis did not communicate. It was against his interest to do so because he was in fact a secret partner of Buckham in the purported sale of the securities. But there was nothing in the evidence to put appellee on notice that he did not fairly represent his firm. So far as appellee was concerned, the best possible means of notice had been used, communication by telephone with the drawer, itself, by one whom it had no grounds to distrust.

This was a circumstance, together with the court's finding, which we accept, that the legend, "Wire Non-payment" did not appear on the drafts, to be taken into consideration in determining whether there was unreasonable delay in notifying appellants. We think there was sufficient evidence to support the finding in favor of appellee.

Appellants claim that appellee, in its wire of May 15, should have advised it of the non-payment of all the drafts instead of those specifically inquired about, but such additional information would have placed appellants in no better position. Notice that drafts "A," "B" and "C" had not been paid certainly put appellants upon notice that none had been paid.

Appellants cited Fahy et al. v. Irving Trust Co., 247 App.Div. 767, 286 N.Y.S. 578, and numerous other cases, holding that a four days' delay, or even less, in giving notice of non-payment was negligence. But the question, whether a particular delay is negligence, is one of fact to be determined from the circumstances of each individual case. We have decided that the delay there was not unseasonable.

Finally, the court found that no loss resulted to appellants. The loss claimed was the depreciation in the securities between the date when appellants should have received notice of non-payment and the date such notice was actually received; or between May 13 and May 16 as to drafts "A," "B" and "C" and May 18 as to the remaining drafts. The court found that the market value of the securities did not depreciate but actually increased between these dates and there was substantial evidence to support the finding. We find no reversible error on the records.

Judgment affirmed.