NEW ORLEANS, JANUARY 1881. 17

Schmidt et al. vs. City of New Orleans.

## No. 7563.

### W. B. SCHMIDT ET AL. VS. CITY OF NEW ORLEANS.

When the sureties have not pointed out property of the principal debtor and advanced the sum necessary for the discussion, and said principal debtor is notoriously insolvent, they cannot enjoin the execution of the judgment against them, on the plea of discussion.

The sureties of the sheriff cannot plead compensation against debts of the latter, for which they are responsible and which, by law, are not compensable, such as claims against him for moneys officially received and not accounted for.

Judgments against the City of New Orleans, which are made inexecutory by law, cannot be compensated against. If they were compensable, they would be executory.

APPEAL from the Third District Court, parish of Orleans. *Monroe, J.*

*Breaux & Hall, Jas. H. Grover* and *T. W. C. Ellis* for Plaintiffs and Appellees.

First—The liability of the surety on the official bond of the sheriff is not fiduciary, and totally different from that of the sheriff, which arises from the law and independently of the bond. Rev. Statutes, Sec. 3538; C. C. Art. 3035; Troplong, du Cautionnement. Ed. de Paris, 1846, Tome XVII, No. 51, p. 59.

Second—Liability on bond must be strictly construed; Troplong, du Cautionnment, p. 135 ; U. S. vs. Boyd et al., 15 Peters, 208; Miller vs. Stewart, 9 Wheaton, 702.

Third—The suit of the city being for the satisfaction of injury inflicted upon her by the default of a principal against the surety on his bond, is not privileged under the exceptions of Article 2210; and compensation takes place by law whenever she is seeking to enforce such claim against her judgment creditor. C. C. 2207, 2210 .

*Saml. P. Blanc,* Assistant City Attorney, for Defendants and Appellants.

The opinion of the Court was delivered by

BERMUDEZ, C. J. The plaintiffs, as sureties of a defaulting sheriff for the parish of Orleans, have enjoined the execution of a judgment against him and themselves, rendered for an amount of municipal taxes collected by him, with due authority, but not turned over by him to the City of New Orleans, to whom they rightfully belonged.

As grounds for the injunction, they averred—

1st. That by the very terms of the judgment, on which the writ issued, the property of the principal was to be *first* discussed;

2d. That the claim of the city against the sureties, is compensated by a larger claim which they hold against it, and which is liquidated by an executory judgment.

The suit by the city against the sheriff and his sureties was instituted in March, 1878, and ultimated with a judgment against the defendants, in this Court, in March, 1879. The sureties did not plead compensation at the time, as they were not then creditors of the city. In June

2

following, the city issued execution to coerce payment of her judgment, but, on the same day, the sureties acquired a judgment against the city, notified it of the fact, and shortly after obtained an injunction to arrest the process against them. The case was tried, and the lower court decreed the claim compensated. From the judgment so rendered, the corporation appeals.

### On the first ground.

By *discussion* is meant the seizure and sale of the property of the principal to satisfy the demand against him, before proceeding against that of the surety; but the surety who insists upon such discussion, must first point out property of the main debtor, and furnish a sufficient sum to carry the discussion into effect. R. C. 3045, 3047, and numerous decisions.

It is not claimed by the plaintiffs that they have complied with those essential prerequisites.

Evidence, in the record, establishes the hopeless insolvency of the defaulting sheriff, and the possession by his sureties of whatever assets he may own. These, however, do not appear to have been delivered to the executive officer in charge of the writ, for reduction into money, towards satisfaction of the city's judgment.

Because of such failure to point out property and to advance the sum required for discussion, and the notorious and, as it were, *admitted*, bankrupt circumstances of their principal, the plaintiffs cannot be heard to press their first ground of objection, which is, therefore, considered as untenable.

### On the second ground.

The official obligation assumed by the sheriff, when he entered upon the discharge of his functions—as well towards the city as a State functionary, as towards all other litigants—was that of a *public agent*, necessarily, *virtute officii*, fiduciary. It was three-fold, in a pecuniary point of view. It consisted: in *collecting* amounts called for by writs in his hands, or which he was otherwise authorized to receive in *keeping* the same; in *turning* over the same to those entitled thereto; the whole to be done "*well and faithfully*." It was an obligation for the *specific performance* of official duties. It existed primarily, independent of any bond. Its essence and nature were neither restricted nor amplified by the giving of the bond furnished under the statutory requirement. The bond is the evidence of that obligation, relative to the payment of moneys received and not paid over by the sheriff, or of sums due by him, in consequence of acts of commission or omission, misfeasance or nonfeasance, in office, which prescription may extinguish. That obligation was incorporated in the bond, and became its heart and soul, both

by operation of law and covenant of parties, for the benefit of all concerned, in exacting a specific performance by the sheriff of the duties incumbent upon him for the restitution of moneys coming officially to his hands. From the moment that this incorporation was effected, and the bond was signed and accepted, the sheriff and his sureties obligated themselves expressly by a *common tie:* the former, to do and perform faithfully all his official duties, without any undue exception; the latter, to do and perform faithfully the same duties, in the same manner, to the same extent, even unto accessories (R. C. C. 3040), in case of any dereliction on his part, to discharge them properly. So that all the obligations to pay money, of whatever nature, of the sheriff, *as such,* became the several obligations of each surety (up to the stipulated limit, concerning amount in the bond), and each surety, at the same time, entitled to oppose, eventually, all the means of defenses, except those personal to the sheriff, which the sheriff could urge, for his own exoneration, against parties asserting adverse pretensions; but they did not then acquire rights which the sheriff did not and could not possess.

The obligations of the sheriff, as such, are indivisible. Either they were all inserted in the bond, or they were not. If they were, the sureties cannot escape liability. If they were not (and they should have been), then only part of those obligations was embodied in the bond, and part was left out, and two sets of obligations were recognized—a consequence which is wholly repugnant. What were the obligations incorporated; what were those omitted? No one can tell. They are determined by law, either specifically or generally, as the face of the bond itself shows. The law under which it was given forms part of the bond. There was no authority for any such distinction of the same. If any was attempted to be effected, it was an abortive attempt, which the law cannot sanction; but we do not discover that any division was sought, and are satisfied that none was made. The obligations of the sheriff are, therefore, to be considered as transported into the bond in their entirety; and so being, they bind, conclusively and absolutely, his sureties for *specific performance,* in the same manner that he is himself bound by law.

The law, in its jealousy and vigilance for the safeguard of litigants, to whom it has assigned a public agent, has surrounded and secured the fulfillment of the duties imposed upon such functionary with unusual high pains and penalties. In this instance he is bound to give bond; he is subjected to civil arrest, to removal from office, to infliction of damages, to a deprivation of the benefit of the laws for the relief of insolvent debtors, to imprisonment at hard labor. C. P. 730, 767; R. S. 905, 907, 1809, 3538.

Under the terms of the law under which his bond was furnished, he

bound himself to " *well and truly pay over all sums of money that shall come into his hands as sheriff to the person entitled by law to the same.*"

The sheriff, for certain purposes, is constituted by law a public agent of the litigants in the several courts of which he is the executive officer. It is his duty safely to keep, *as a public trustee,* funds collected, or otherwise received by him, for account of such litigants. It is not necessary that he should open a separate account in favor of each individual for whom he has collected the money. In many cases this would be impracticable.   *    *    *   It is sufficient that he keep a separate account, as a public officer, for the benefit of the several suitors whom, in his official capacity, he represents. 11 A. 727.

He is not to be viewed as a banker, for the ordinary relations of debtor and creditor do not exist between him and the litigants, for whose account he receives and keeps money on hand. The moment that an ordinary customer leaves his money, as an ordinary deposit, with his banker, the latter, under the tacit pact, consecrated by usage and custom in the financial world, becomes the owner of it, acquires the right of using it, of converting it to his own purposes, remaining nothing more than an ordinary borrower, bound, in a civil action only, to restitution, and in no way subjected to criminal prosecution; but this is not the case with the sheriff. He is bound to *retain* and *keep* the money on deposit for account of those entitled to it. He has no power to use it for his individual purposes, but holds it subject to disbursement, on the order of the court by whose process it was recovered; or, when the case is clear, subject to the order of the party for whose benefit it was realized. R. C. C. 3189.

The sheriff, being an agent, is bound by the same rules which control other mandataries, and compel them to restore to their principal what they have received for him, even unduly. R. C. C. 3005. His official character, far from weakening, rather aggravates that responsibility and duty, the fulfillment of which is secured by his solemn oath and by his official bond. In case of a violation of that trust, he is ranked among unfaithful depositaries. 1 M. 347; 3 A. 514; 6 A. 207, 40; 10 A. 47; 12 A. 527; 7 A. 531; 11 A. 73.

It is clear that, as a depositary, he could not plead compensation on a demand for restitution of the money, so, on deposit, in his hands. R. C. C. 2210, ¿ 3.

He could not assign to a third person a claim against him who has made the deposit, and which he could not set up in compensation, in order to have the deposit seized to satisfy such claim, for this would be doing *indirectly* that which the law, for consideration of public and private good, commands shall not be done *directly* at all. Fenet Dis-

cours et Motifs, xiii. p. 283; Journal du Palais, 1818, p. 166; Marcadé, 4, 832, 3°; Troplong's Cautionnement on Art. 2034, C. N., No. 470.

The character of moneys collected and not returned to the city by the defaulting sheriff is not to be lost sight of, and cannot be ignored by the sureties, plaintiffs in injunction, who were co-defendants with the sheriff in the case of the city. Those moneys formed part of the revenues of the city, under legislative directions; they were appropriated, in anticipation, by law for the purpose of meeting the public indebtedness and the necessary public expenditures. They constituted the *alimony* of the municipal government, and were not liable to seizure, or other diversion from the object for which they were intended. The ordinary, and even the privileged creditors, if such exist, are not permitted to levy any judgment on such revenues or *alimony*, in satisfaction of legal, just, and equitable claims due them, even though liquidated by judgment, or for salaries due them as municipal officers, and which those very revenues were raised to discharge, so necessary and indispensable were those sources of public income deemed for the very life and well being of the government. Under Act 59 of 1870, no writ of *fieri facias* can issue against the city. The judgment offered in compensation could not, therefore, be enforced by seizure of city property; but, even if it could, it certainly could not be directed against property or assets of the city, which the law declares shall not be seized at all; such, for instance, as the proceeds of taxes and licenses. Hilliard on Tax. 17; Cooley on Tax. 13; Domat, 2299; 65 Penn. St., 9; 5 Monroe, Ky., 318; S. C. 21 Am. Rep. 569; 31 Ark. 571; 6 A. 570; 7 A. 192; 21 A. 292; 27 A. 459; 28 A. 836; 30 A. 541.

That which the sheriff could not do, that which he was legally forbidden from doing, his sureties cannot claim the right of doing in his place, as the prohibition which affects him affects them, their obligations and rights being commensurate. To allow the claim of the city against the sheriff and his sureties to be compensated by the judgment which the latter have acquired by assignment, since a liability has been fixed upon them, would clearly be to sanction a diversion of public moneys from the legitmate objects for which they were to be applied; a seizure and absorption of indispensable municipal revenues by parties not entitled to them, an undue *preference* of an ordinary judgment creditor over ordinary creditors similarly situated. The application of moneys realized by taxation to the purposes for which they were intended, is entrusted to the officers of the government, and the laws relative to it must be maintained, and firmly enforced in their integrity.

The rules established by law in that regard are precise and unusually strict, and must be observed.

Act No. 7, E. S. 1870, sec. 19; Act No. 38, 1879, secs. 1, 4, 5.

This last section requires the taxes and licenses to be kept *sacred* in order that they be applied to the object of their appropriation, until the liability or debt, thus provided for, shall have been extinguished. Officers violating their trust, in that respect, are visited with examplary punishment.

The sheriff was bound to return *money* for the MONEY which came officially to his hands. He has failed to comply with that obligation. His sureties, bound equally with him, to that end, must meet the obligation which he has not fulfilled, and must pay *money*. They cannot be permitted to set off the judgment of the city against the sheriff for *moneys* collected by him for municipal taxes by a judgment in favor of an ordinary creditor of the city, on an ordinary claim against the corporation. The mode of payment of this judgment is regulated by the Act of 1870, No. 5, with the requirement of which the plaintiff, in the case in which it was rendered, appears to have complied.

The practice of setting off one judgment against another, between the same parties, is said to be ancient and well established; but they must be due *in the same right*. The articles of our Code of Practice seem to contemplate, however, that the defense in compensation should exist pending the demand, and should be then set up; but they provide that, if it be not urged, there shall be relief for the creditor, in a direct and independent suit, to be subsequently brought.

At common law, it has been held that an assigned judgment is not a proper subject of set-off in the hands of the assignee, and even that a judgment obtained and transferred, after the commencement of a suit, cannot be set-off in the suit; in such cases a discretion in equity being vested in the court. 3 N. J. 751; 44 N. H. 125; Haw (Ky.) 75; but we are not inclined to consider that such restrictions exist in our system, to such modes of extinguishment of reciprocal obligations, due in the *same right*, where the causes of the judgment are of equal dignity. We will nevertheless keep a watchful eye on the revendication of such claims, when asserted against public moneys due to political corporations, and necessary for public purposes.

While rejecting the compensation set up, and deciding that the injunction improperly issued, this Court do not feel themselves authorized to award damages, under the circumstances of this case.

The question presented was a novel one, for which no exact precedent can be found. The plaintiffs were advised conscientiously, and honestly thought they could resort to the remedy which they obtained; and the judge of the lower court was of the same opinion.

It is, therefore, ordered, adjudged and decreed that the judgment of the lower court be reversed; and, proceeding to render such judgment as should have been rendered, it is ordered, adjudged and decreed that

the injunction herein issued be dissolved, and that the execution of the writ herein enjoined be proceeded with in furtherance of the judgment upon which it issued, and according to law; the plaintiffs and appellees paying costs in both courts.

Mr. Justice Fenner recuses himself as having been of counsel.

---

In this case a rehearing is granted, the attention of counsel being specially directed to the question, whether a surety can or not plead compensation, when the principal is prohibited from pleading such, as against the creditor.

The case will be called and fixed as a summary case, and oral argument will be allowed.

---

## On Rehearing.

Bermudez, C. J.   The sureties no longer dispute their liability under their bond for the defalcation of the principal.   A final judgment has set that question forever at rest.   They claim that this indebtedness, judicially liquidated, is compensated by a judicial liquidation of a money claim which they hold against the city.

We have attentively listened to the argument on the rehearing, and reviewed the authorities again referred to, as well as additional ones, and remain satisfied that our previous solution of the question ought not to be altered.

A surety is liable in the same manner that the principal himself is, and is bound with him, and can be held to a specific performance, in his place, of all his obligations, the execution of which has been secured, whenever such specific performance was agreed to and can be enforced.

If a principal assumes to make a fine artistic portrait from his own brush, and it is agreed, that in case of his failure to do so, a surety will pay a sum of money, it is quite clear that the surety could not be held to specific performance by making the picture, from the very nature and terms of the contract, which was merely personal, and which provided for a fixed or determined money penalty in the event of inexecution; but had the penalty been that the surety, himself a painter, would, in case of failure on the part of his principal to do the work, himself make the portrait, the surety would be bound to conform with his obligation, and the power of the law, as far as it could enforce specific performance, would have to be exerted to accomplish that purpose.

The bond in this case affords an illustration of the impossibility of requiring specific performance by the sureties of *all* the obligations of the principal.   The bond provides, that if the sheriff shall well and

faithfully execute and make true returns, according to law, of all writs, orders, process, as shall come into his hands as sheriff,    *    *    * then the obligation to be void, otherwise to remain in full force and virtue.

It is patent that, if the sheriff had failed in those particulars, the sureties could not be held to perform the official functions to which he may have proved derelict, because citizens cannot be transformed in that manner into public officers.

We consider that the sureties cannot oppose compensation, as it is offered to be done, for two reasons: first, *because* the principal could not have pleaded it, and they have no greater rights than he has; second, *because* the two debts and judgments are not of equal dignity.

Suretyship is an accessory promise by which a person binds himself for another, already bound, and agrees with the creditor to satisfy the obligation, if the debtor does not. R. C. C. 3035; Troplong, Cont., p. 4.

The obligation of the surety is the same as that of the principal debtor, with the exception that it may be alternative, though solidary, *idem esse fide jubeo.* By a necessary consequence, his obligation cannot exceed the principal's, nor can it be contracted under more onerous conditions, and the means of defense which protect the principal debtor against exigencies of the creditor are common to both, whether the debtor has used them successfully, or has not employed them at all, neglecting or refusing to do so; but this rule is subject to the restriction, that the surety cannot avail himself of the exceptions merely personal to the debtor. R. C. C. 3036, 2098, 3060; Pothier, Obl., 274, 595; Domat, 1836; Troplong, Cont., 84, 494.

Article 2210, R. C. C., enumerates the only cases in which the debtor cannot plead compensation, and naturally omits mentioning those in which he can do so. It cannot be claimed that the cases not enumerated are to be considered as enumerated among those in which compensation can be pleaded.

Among the former are the cases of a demand for the restitution of a deposit, and of a debt which is declared not liable to seizure.

The following article, 2211, enumerates the cases in which the surety may oppose compensation. Can it not be said, with reasons equally potent, that the surety can plead compensation only in the cases mentioned, and in none other?

The surety is allowed to oppose in compensation what the creditor owes to the principal debtor; but the latter cannot oppose the compensation of what the creditor owes to the surety. The debtor *in solido* is not allowed to oppose compensation of what the creditor owes to his co-debtor. (C. C. 2211). It is not there mentioned that the surety can

plead in compensation when, and what, the debtor cannot. By legal and logical intendment the reverse is the law.

Article 3060, R. C. C., clearly sets that question at rest, when it says that the surety may oppose to the creditor all the exceptions belonging to the principal debtor, which are *inherent* to the debt, but he cannot oppose those which are personal to the debtor. The defense must be ·one *inherent* to the debt, in order to be susceptible of plea by the surety. *Inherent* means, that which exists inseparably,—which naturally pertains to. How does the judgment pleaded by the surety against the city, on the claim upon which it is founded, which is its consideration, exist inseparably, or pertain to the debt claimed by the city from the sheriff and his sureties? They are in no way connected or dependent. They have distinct natures and characteristics.

The claim, or debt, upon which the judgment opposed in compensation was rendered, was a supply of gas to the city by the Gas Company. The claim, or debt, upon which the city recovered judgment against the defaulting sheriff and his sureties, is for taxes and licenses, *public moneys*, received by that officer as a legal *deposit*, and not returned by him; one against which he cannot plead compensation.

The judgment opposed in set-off was recorded under Act 5 of 1870, and is not executory against the city, otherwise than in the manner provided by that law. Were it to be permitted to extinguish, as compensable, the judgment enjoined, the consequence would be that a judgment not executory would be executed; and, even then, would be satisfied out of diverted funds, which could not have been levied upon to satisfy the same judgment; would be doing indirectly that which cannot be done directly.

We think that the obligations of the sureties in this case are identical with those of their principal; that they cannot plead defenses which he is prohibited from setting up; that, as he is bound to pay back *money*, so they must be held to pay *money* to the city to replace that received and not returned by their principal.

It is, therefore, decreed that our former judgment herein remain undisturbed, and that the judgment enjoined be accordingly executed, as the law provides

Levy, J., absent.