### In re CANAL BANK & TRUST CO. (GUARANTY BANK & TRUST CO. et al., Interveners).*

#### No. 16435.

Court of Appeal of Louisiana. Orleans.

Nov. 4, 1936.

*Rehearing granted Nov. 30, 1936.

Deutsch & Kerrigan & Burke, of New Orleans, for appellants.

Dufour, St. Paul, Levy & Miceli, of New Orleans (Rene J. Waguespack, of New Orleans, of counsel), for appellee.

McCALEB, Judge.

On February 24, 1933, Guaranty Bank & Trust Company of Alexandria, La. (hereinafter referred to as Guaranty Bank), was the owner of certain checks which had been deposited by customers of that bank for collection and credit. These checks, amounting in total to the sum of $802.85, were drawn on Commercial Bank & Trust Company, Covington, La., Bank of Baton Rouge, Baton Rouge, La., and Union Bank & Trust Company, Baton Rouge, La. (hereinafter referred to as the Country Banks).

The Guaranty Bank, having an account represented by money on deposit with the First National Bank of Shreveport, La. (hereinafter referred to as Shreveport Bank), forwarded said checks to the Shreveport Bank for collection and credit. The checks were received by the Shreveport Bank and that bank credited the account of the Guaranty Bank with the total aggregate of the items. Thereafter, the Shreveport Bank, having an account with and money on deposit at Canal Bank & Trust Company of New Orleans (hereinafter referred to as Canal Bank), forwarded these checks, on February 25, 1933, to the Canal Bank for collection and credit. On February 27, 1933, Canal Bank received the checks from the Shreveport Bank and credited the account of the Shreveport Bank with the face value of the items. The Canal Bank thereupon forwarded the checks to the Country Banks on which they had been drawn, and on March 1, 1933, each of the Country Banks (having money on deposit with Canal Bank) forwarded their respective checks, drawn on the Canal Bank and payable to Canal Bank's order, in full settlement. These Country Banks, in turn, marked the checks drawn by their depositors "paid," and debited the drawers' accounts with the respective amounts of the items.

The checks of the Country Banks, dated March 1, 1933, which had been forwarded to the Canal Bank, in payment for the original checks drawn on the Country Banks, reached the Canal Bank some time after March 1, 1933. In the meantime (after March 1, 1933), the Canal Bank was closed by order of the New Orleans Clearing House but was permitted to reopen on March 3, 1933, on a restricted basis. When the Canal Bank received the checks of the Country Banks, drawn on it, that bank, by order of the clearing house, had frozen 95 per cent. of all bank deposits and only 5 per cent. of said bank deposits were available for withdrawal by depositors. The 5 per cent. of the deposits of the Country Banks, available for withdrawal, was insufficient to pay the face amount of the checks drawn by the Country Banks on the Canal Bank.

In view of these circumstances, the Canal Bank, on March 3, 1933, charged back the account of the Shreveport Bank with the full total of the checks drawn on the Country Banks and notified the Shreveport Bank of its action as follows:

"We charge your account and enter for collection items payable in states that, according to newpaper dispatches, may be affected by a bank holiday or restricted withdrawals.

"We shall use our best efforts to effect payment thereof but do not assume any responsibility for non-payment or for any delays that may be experienced."

The Shreveport Bank, after receiving the above advice from the Canal Bank, charged back the full amount of the items against the account of the Guaranty Bank and notified the Guaranty Bank to that effect.

Thereafter, from March 3, 1933, until May 20, 1933, when the Canal Bank went into liquidation, it operated upon a restricted basis. That Bank, prior to liquidation, had made arrangements with the Reconstruction Finance Corporation to provide sufficient cash funds so that it would be able to pay to its depositors, as an initial liquidating dividend, 30 per cent. of the total amount of their bank balances.

From the time the Canal Bank received the checks of the Country Banks, drawn against the Country Banks' deposits with the Canal Bank, until May 20, 1933, when the Canal Bank went into liquidation, the Canal Bank retained the checks of the Country Banks. After the declaration of 30 per cent. dividend, when the Canal Bank was placed in liquidation, the available balances of the Country Banks were increased thereby to such an extent that there were sufficient funds available to pay the checks drawn by the Country Banks. The Canal Bank accordingly, at that time, paid the checks drawn on it by the Country Banks and deposited the proceeds thereof in a special account in the American Bank & Trust Company of New Orleans.

Thereafter, on January 23, 1934, the Guaranty Bank, claiming to be the owner of the proceeds of the checks drawn on the Country Banks, wrote to J. S. Brock, state bank commissioner, and requested the said Brock to do what he could in getting the matter straightened out at an early date. Mr. Brock referred the letter of the Guaranty Bank to Mr. H. G. Thompson, special agent of the Canal Bank in liquidation, and on February 7, 1934, Mr. Thompson replied to the letter, written by Guaranty Bank to Mr. Brock, stating that the Canal Bank had been endeavoring to get the consent of the Country Banks to recognize the action of the Canal Bank in paying the checks, drawn by the Country Banks

on the Canal Bank, out of the liquidating dividend to which the Country Banks were entitled. He further informed the Guaranty Bank that the consent of the Country Banks had not been obtained, and, upon advice of the Canal Bank's attorneys, the matter would be held in abeyance until the Country Banks approved of the Canal Bank's action.

Under the foregoing state of facts, the Guaranty Bank filed an intervention in the liquidation proceedings of the Canal Bank & Trust Company, setting forth that under the provisions of Act No. 63 of 1926 it was entitled to a privilege on all of the property and assets of Canal Bank in the sum of $802.85 representing the total amount of the checks drawn on the Country Banks.

In due course, the Canal Bank answered, and, after denying that Guaranty Bank was entitled to a privilege, sought to take advantage of the provisions of Act No. 123 of 1922, and, by way of interpleader, deposited the amount in dispute into the registry of the court and cited the Shreveport Bank and the Country Banks to appear and answer and make such claim to said money as they might desire.

The Shreveport Bank appeared and joined the Guaranty Bank in making claim to the money deposited. The Country Banks excepted to the jurisdiction of the court ratione personæ. After hearing on the exception to the jurisdiction, the court sustained it, and dismissed the interpleader proceedings.

After the dismissal of the interpleader of the Canal Bank, the Shreveport Bank intervened in the liquidation proceedings and joined the Guaranty Bank in the claim for a privilege on the assets of the Canal Bank.

The case was tried and resulted in the district judge dismissing the interventions of the Guaranty and Shreveport Banks. These banks have appealed to this court from the adverse judgment.

The primary question presented for our solution is whether or not the intervener banks have a privilege upon the assets and property of the Canal Bank within the meaning of Act No. 63 of 1926.

The pertinent part of this act, which has been the subject of so much litigation within the last few years, reads:

"When any bank receives as agent (whether as agent of another bank or of any person, firm or corporation) for collection and remittance or delivery to its principal and not for deposit any bill, note, check, order, draft, bond, receipt, bill of lading, or other evidence of indebtedness, or other instrument, and collects or realizes any money on the same, and has not deposited same to the credit of said principal, the principal shall have a privilege on all of the property and assets of said agent bank for the amount so collected or realized by said agent bank, which privilege shall be superior to the claims of all depositors of said agent bank." Section 1.

█ It is to be observed at the outset that it is now well settled that, in order to sustain the claim of privilege, the party claimant must show that he appointed the bank as his agent for the sole purpose of collecting a check or draft and remitting the proceeds thereof to him. If the claimant allows the bank to deposit the proceeds collected in his account or to the account of third persons for his benefit, then the privilege does not attach. See In re Liquidation of Canal Bank & Trust Co. (Intervention of Clark & Co.), 181 La. 856, 160 So. 609, 99 A.L.R. 473; In re Canal Bank & Trust Co. (Intervention of the City of New Iberia) (La.App.) 167 So. 858 and In re Hibernia Bank & Trust Co. (Intervention of Pan American L. Ins. Co.) (La.Sup.) 169 So. 464.

█ Accordingly, it must be conceded here that, when the Guaranty Bank sent the checks in question to the Shreveport Bank and received credit therefor, Act No. 63 of 1926 was without application as the Shreveport Bank became the owner of the checks, subject, of course, to its right to charge back the account of the Guaranty Bank in the event the proceeds of the check were not collected. Likewise, it must also be conceded that, when the Shreveport Bank forwarded these checks to the Canal Bank for collection and credit and actually received the credit from the Canal Bank on February 27, 1933 (when the Canal Bank was a going concern), the Canal Bank thereby became the owner of the checks subject to its right to charge back the account of the Shreveport Bank in the event the checks were not paid by the drawee Country Banks. Under the foregoing view, unless the Canal Bank did something in the meantime to change the relationship of the parties, from debtor and creditor to principal and agent, the interventions of the Guaranty Bank and the Shreveport Bank must fail.

However, counsel for the interveners contends that, although the Shreveport Bank had forwarded the items (drawn on the Country Banks) to Canal Bank for collection and credit, when the Canal Bank, after March 1, 1933, charged back these items against the account of the Shreveport Bank, and advised the Shreveport Bank that it was entering those checks for collection, this action on the part of Canal Bank resulted in changing the status of the parties, revested ownership of the checks in the Shreveport Bank, and that thereafter the Canal Bank became the mere agent of the Shreveport Bank in effecting the collection of the items. From this premise, it is argued that, when the Canal Bank received the checks of the Country Banks in payment of the items, it became the plain duty of the Canal Bank, as agent of the Shreveport Bank, to remit the proceeds to the Shreveport Bank and, having failed in this respect, that interveners are entitled to the privilege claimed.

On the other hand, counsel for the liquidator of the Canal Bank maintains that the charge back of the account of the Shreveport Bank was ineffective, for the reason that the checks drawn on the Country Banks had been paid to the Canal Bank by the Country Banks through operation of law, and he relies upon the Wainer Case, 178 La. 961, 152 So. 578, as sustaining his contention. It is asserted that this charge back was due to an error of law which is now not binding upon the liquidator in view of the fact that the rights of other depositors had become vested. In other words, it is claimed that, when the Canal Bank, as owner, forwarded these items for payment by the Country Banks, and when on March 1, 1933, the Country Banks forwarded their checks to the Canal Bank in payment of the same, the debt of the Country Banks to the Canal Bank was extinguished by compensation, because the Canal Bank was admittedly indebted to the Country Banks at that time in an amount far in excess of the face value of the items in question.

The date on which the Canal Bank received the checks of the Country Banks, in payment of the amount of the items, is shown by the record to be subsequent to March 1, 1933. If the date the Canal Bank received the checks, drawn on it in payment of the items, was after March 3, 1933, then, undoubtedly, the Canal Bank was without right to charge back the account of the Shreveport Bank on March 3, 1933, because the Canal Bank was still the owner of the items in question, and the only condition of the agreement giving the Canal Bank the right to charge back the items was in the event that the items were not paid by the drawee banks. Therefore the Canal Bank could not exercise this right until after the drawee banks had refused to honor the items and if it did, prior to dishonor, the charge back could not have effect in law. In view of these circumstances, we must assume that the checks of the drawee banks on the Canal Bank, dated March 1, 1933, were received by the Canal Bank in the usual course of business on March 2, 1933, and that the Canal Bank, through error of law, did not recognize, at that time, the demand of the drawee banks as having the effect of compensating the mutual obligations which the Canal Bank and the drawee banks owed to each other and which were then due and demandable.

Under article 2208 of the Revised Civil Code, it is provided that "compensation takes place of course by the mere operation of law, even unknown to the debtors; the two debts are reciprocally extinguished, as soon as they exist simultaneously, to the amount of their respective sums."

Applying the provisions of this article to the facts in the case at bar, we find the following:

On February 27, 1933, the Canal Bank became owner of the checks forwarded by the Shreveport Bank, having paid therefor by crediting the account of the Shreveport Bank with the face value thereof, subject, however, to the right of the Canal Bank to debit the account of the Shreveport Bank for these items in the event they were not ultimately paid by the drawees. The checks purchased by the Canal Bank from the Shreveport Bank were drawn on the Country Banks, the latter having on deposit with the Canal Bank at the time of the purchase sufficient funds to pay the face amount of those checks. At that time, however, the Country Banks had not honored the checks and it was therefore necessary for the Canal Bank to forward the checks to the drawee Country Banks in order to ascertain whether the Country Banks recognized the checks drawn on them as their valid obligations. These checks were forwarded by the Canal Bank on February 27, 1933, and on March 1, 1933, the Country Banks honored the checks and in turn issued their respective checks on the Canal Bank. Under article

2208 of the Code, the minute the Country Banks honored the checks drawn upon them, compensation took place between the Canal Bank and the Country Banks (as debtors holding liquidated obligations reciprocally due and demandable against each other), and the debt of the Country Banks was thereby extinguished by operation of law.

It follows that, the obligation of the drawee Country Banks having been previously extinguished by compensation, the Canal Bank was without right, on March 3, 1933, when it, through error of law, charged back the items and debited the account of the Shreveport Bank. This charge back or debit against the account of the Shreveport Bank being null, it becomes apparent that the interventions of the Guaranty Bank and the Shreveport Bank cannot be maintained.

Counsel for the liquidator of the Canal Bank questions the right of the Guaranty Bank to intervene in this suit on the ground that there is no privity of contract between the Canal Bank and Guaranty Bank. In view of the fact that in any event the case of the Guaranty Bank must be dismissed, it is unnecessary to decide the point presented.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.