## INVESTORS SYNDICATE v. DEPOSIT GUARANTY BANK & TRUST CO. et al. *

### No. 16397.

Court of Appeal of Louisiana. Orleans.
Jan. 25, 1937.

Eugene J. McGivney and Solomon S. Goldman, both of New Orleans, for appellee Investors Syndicate.

Dufour, St. Paul, Levy & Micelli, of New Orleans (Anna Judge Veters, of New Orleans, of counsel), for appellee Canal Bank & Trust Co.

JANVIER, Judge.

Investors Syndicate is a corporation organized under the laws of the state of Minnesota and doing business in various states of the Union, including Mississippi and Alabama. At the time at which occurred the events which gave rise to this litigation it maintained an account in the Deposit Guaranty Bank & Trust Company in Jackson, Miss., and also an account in Birmingham Trust & Savings Bank in Birmingham, Ala. It desired to transfer certain funds from its account in the Jackson bank to its account in the Birmingham bank, and accordingly, on February 23, 1933, it forwarded to the Birmingham bank certain checks listed on a printed slip prepared by it, and among which were included two with which we are concerned in this litigation and which were drawn by it, the Investors Syndicate, on its account in the Jackson bank. These two checks totaled $1,323.15, were drawn to its own order, and were indorsed by it. The memorandum which accompanied the checks when they were sent to the Birmingham bank for deposit stated that they were inclosed "for credit."

On February 25, 1933, the Birmingham bank acknowledged receipt of items totaling $2,508.71, among which were admittedly included the two checks in question, drawn on the Jackson bank. The said acknowledgment was in the form of a printed deposit slip, on which slip there were blank spaces provided for the entry of items received for collection and also blank spaces for the entry of items received for credit. The items in question were entered on the said form by the Birmingham bank in the blanks provided for items entered "for credit." Near the top of the form there was printed a stipulation which, apparently, was intended to apply to all items, whether received for credit or for collection, and which reads as follows:

"Items listed hereon, other than money, are deposited and received for collection only, regardless of the form of endorsement under which deposited and received.

Henriques & Mayo, of New Orleans, for appellant Deposit Guaranty Bank & Trust Co.

Items drawn on this bank not good at close of business day may be charged back to the depositor. Items received for collection, credit or remittance and not drawn on this bank are taken at depositor's risk and should same be lost or should no returns be received within a reasonable time such items may be charged back to depositor and as to such items this bank shall be liable only when proceeds in actual funds or solvent credits shall have come into its personal possession. Items may be sent direct to bank upon which they are drawn or at which they are payable, or to collecting agents for collection and remittance and collecting agents shall likewise have the right to send items direct to bank on which they are drawn or at which they are payable. This bank and/or collecting agents may accept cash or draft in payment of such items and will not be liable for failure to collect any such draft. Each collecting agent is the agent of depositor, but no agent shall be liable for any loss growing out of any act, omission, default, or failure of another agent. Delivery to this bank of items for collection, credit or remittance, shall constitute acceptance of the above conditions by the depositor, in the absence of written notice to the contrary at the time of such delivery, and written acceptance by this bank of the conditions, if any, specified in such notice."

The Birmingham bank gave credit on its books to plaintiff and, having an account with the then operating Canal Bank & Trust Company in New Orleans, sent the two checks to that bank, which, upon receipt thereof, gave to the Birmingham bank credit for the total amount. Then the Canal Bank forwarded the two checks to the Jackson bank, on which they were drawn and in which there was, to the credit of the drawer, Investors Syndicate, a balance sufficient to pay the two said checks.

The Jackson bank, after receipt of the two checks, on February 28th, marked them paid and charged them to the account of the said drawer, and, since it maintained an account with Canal Bank, forwarded to that institution its draft drawn on said Canal Bank, directing it to pay to itself, out of the said account, the total amount of the two said checks. At that time the Canal Bank was operating unrestrictedly as a going concern, though, on the day on which the said draft was received by it, it had ceased to do business on an unre-

stricted basis. When the Birmingham bank was advised that its credit with the Canal Bank was not available because of the partial suspension of the latter, it became necessary for it to "charge back" to Investors Syndicate the amount of the checks for which credit had been previously received.

Thus the account of the said Investors Syndicate in the Jackson bank has been depleted in the amount of the two items, and yet it has not actually received, through the Birmingham bank, the amount thereof, though, when credit was first given it it could have withdrawn the amount had it desired to do so. In this suit the said Investors Syndicate seeks redress for the loss sustained and maintains that it never parted with ownership of the two checks and therefore is entitled to recover the proceeds thereof, wherever found, and that those proceeds are found in possession of Canal Bank & Trust Company in liquidation, which did not own the items and had no right to the proceeds except as agent for the owner and that it, the Investors Syndicate, as owner, may claim directly the said proceeds from the liquidators of the said Canal Bank & Trust Company.

Plaintiff also seeks judgment against the Jackson bank (Deposit Guaranty Bank & Trust Company) contending that if, by reason of the closing of the Canal Bank before receipt of the draft from the Jackson bank, it can be held that the remittance was not, as a matter of law, made, then the said Jackson bank has not paid the said checks and cannot charge the amount thereof to the account of said Investors Syndicate. Jurisdiction over the said Jackson bank was obtained by means of attachment, in the hands of the liquidators of the Canal Bank & Trust Company, of funds belonging to the said Jackson bank.

In the district court there was judgment in favor of Investors Syndicate against the Jackson bank, as prayed for, and the suit as against the liquidators of Canal Bank & Trust Company, which, in effect, is for recognition as a privileged creditor, was dismissed. The Jackson bank has appealed and the Investors Syndicate has also appealed from the judgment dismissing its suit as against the liquidators of the Canal Bank & Trust Company.

As we view the matter, the question which must be first considered is

whether the Jackson bank, as a matter of law, remitted to the Canal Bank the proceeds of the two checks, because, if there was no such remittance, then the account of the plaintiff in the Jackson bank was not decreased by the amount of the checks, nor has the Canal Bank or its liquidators received the said amount. It must be conceded that, if the remittance was made, it resulted as a matter of law and not because of the receipt of the draft sent by the Jackson bank to the Canal Bank, because that draft was not received until after the Canal Bank had ceased to do business on an unrestricted basis and at that time the Canal Bank could no more pay to itself, out of its funds, a draft drawn on itself, than it could have paid another draft or check drawn by a depositor.

But the matter must be viewed in the light of the legal situation which existed not when the draft was received, but in the light of the situation as it existed when the Jackson bank received from the Canal Bank the two checks in question drawn by Investors Syndicate on the Jackson bank, which had in its possession ample funds to the credit of the drawer to permit of its honoring the said checks. At that instant—and that was prior to the closing of the Canal Bank—there were in Canal Bank funds to the credit of Jackson bank in excess of the amount of the said checks. Therefore, instantaneously, as soon as the said Jackson bank, by accepting the checks and charging them to the account of the Investors Syndicate, in effect admitted its liability for the amount thereof to the owner of the checks, there was effected, as the result of law, compensation, pro tanto, between it and the owner of the checks, provided, of course, the owner of the checks was indebted to it.

This was one of the important questions decided by us in Re Canal Bank & Trust Company (Guaranty Bank & Trust Company et al., Interveners), 170 So. 427, 430. There we said: "Under article 2208 of the Code, the minute the Country Banks honored the checks drawn upon them, compensation took place between the Canal Bank and the Country Banks (as debtors holding liquidated obligations reciprocally due and demandable against each other), and the debt of the Country Banks was thereby extinguished by operation of law."

But it is said that our view that compensation resulted automatically and instantaneously as soon as the Jackson bank, with funds in its possession belonging to the drawer of the two checks, received them, is incorrect for the reason that in such situation, since the checks were sent to the bank on which they were drawn "for collection," the said bank, making the collection from itself, acted as agent for the owner of the checks, and therefore compensation did not take place, the argument being that an amount due in a fiduciary capacity, as agent, cannot be compensated against an amount due by a principal. There is authority for the view that there is no compensation where one debt is due as agent, or, as it is expressed, one debt is due in a fiduciary capacity, and counsel for plaintiff, in arguing that compensation did not take place, rely on several cases: City of New Orleans v. Finnerty, 27 La.Ann. 681, 21 Am.Rep. 569; Palmer v. Haynes & Company, 2 La. 370; Forsyth v. Martin et al., 3 La.Ann. 514; Schmidt et al. v. City of New Orleans, 33 La.Ann. 17; Dakin v. Bayly, 290 U.S. 143, 54 S.Ct. 113, 114, 78 L.Ed. 229, 90 A.L.R. 999. But we think that those cases are not applicable for various reasons which we shall discuss. In most of them the agency or fiduciary relationship was a relationship, not between the two parties involved, but between one of the parties and a third person. The distinction is clearly pointed out by Marcadé, who, in "Explication du Code Napoleon," in referring to articles 1289, 1290 of that Code, which articles are practically identical with articles 2207, 2208 of our Code, points out that, though the compensation which is now under discussion takes place "without the knowledge of the debtors" and "by the immediate effect of the existence of the four conditions," it does not take place if one of the debts is due to the other as agent for a third person. He says:

"The law, as we have said, speaks here only of legal compensation, the only one which operates of full right, without the knowledge of the debtors, by the immediate effect of the existence of the four conditions required.

"The first of these conditions as indicated by article 1289, is that the two parties be really debtors the one to the other. Thus, compensation does not take place, if, owing me 500 francs, you being creditor in the same sum, not against myself, but against my ward; notwithstanding it is incumbent upon me to pay you in my capacity of tutor, the debt is not mine. Like-

wise, there would be no compensation between that which I owe a succession and that which is owed me by the beneficiary heir; since the acceptance under the benefit of inventory does not operate the confusion of the patrimony, and that, if I have the heir for debtor, it is not he, but the patrimony of the deceased, that I have for the creditor."

In 57 Corpus Juris, p. 451, § 100, under the title "Set-off and Counterclaim," appears the statement that there can be no compensation of "an individual demand against a plaintiff suing in a representative capacity." That that statement does not contemplate representation between the two parties, but representation by one of the parties of a third party, is very evident from a reading of the note which appears at the bottom of the page, and which note reads as follows: "Where a minor commences an action by his next friend, defendant cannot interpose as a counterclaim a liability incurred by the next friend. Smith v. Dawley, 92 Iowa, 312, 60 N.W. 625."

In City of New Orleans v. Finnerty, supra, a collector of levee dues for the city of New Orleans sought to retain certain collections made by him in his official capacity and, by a system of compensation, to apply them to the payment of overdue salary for which the city was indebted to him. The court held that he might not do so and said: "There is no such thing as compensating a debt due by an agent for moneys collected by him in the performance of his duties by a debt due by the principal to the agent."

But the underlying reason there was the realization of the unconscionable result which would have been accomplished if one employee should be permitted by this means to pay himself salary, though all others not so fortunately situated could not achieve the same result. The court said: "But nowhere do we find any authority which sustains the proposition, that a public officer charged with the performance of a specific duty, for a fixed compensation to be paid in a manner pointed out by law, has any right to plead in compensation a sum which is in his hands simply because he has not done his duty by depositing it with the proper officer as soon as he had received it, against his salary and the salary of other officers in his department, and the expenses of the office."

Collections made by public officials belong to the public corporations and are dedicated by law to certain specific purposes. It would not do to permit such employees to divert such funds from their proper destination by the simple method which Finnerty attempted to adopt. On the other hand, where two private individuals, or corporations, are dealing with each other, and one employs the other to collect moneys, as soon as the collection is made the collector becomes the debtor of the other and, if there is a counter obligation, liquidated and equally demandable, we see no reason which would prevent the automatic operation of the compensation which results from article 2208.

The case of Dakin v. Bayly, supra, unless carefully analyzed, would seem to be authority against the operation of the rule of compensation and, since the facts there bore close resemblance to those found here, we have found it necessary to very carefully consider and analyze that decision. After such analysis, we believe that the conclusion reached is not authority for the view that compensation cannot take place in a situation such as this. There certain depositors of the People's Bank of Clearwater, Fla., deposited with that bank checks, drafts, and other items drawn on the First National Bank of St. Petersburg, Fla. The various items were sent by the Clearwater bank to the St. Petersburg bank, on which they were drawn, and the St. Petersburg bank recognized its obligation to pay the various instruments and sent to the Clearwater bank a draft in payment thereof. Later, and before the draft could be honored, as a result of liquidation it became necessary for the United States courts to determine whether there had been effected automatic compensation between the two banks, and it is true that the United States Supreme Court decided that compensation had not taken place and said: " * * * a defendant sued upon his individual debt may not avail himself for this purpose of a demand against the plaintiff held in a fiduciary capacity."

But the fiduciary capacity which was referred to was not the one in which the St. Petersburg bank had received the items from the Clearwater bank, but was the capacity in which the Clearwater bank had received the items from its various depositors. The Supreme Court, by reason of Florida statute, held that those particular

deposits had been made in the Clearwater bank "for collection" and not for credit, and that therefore the various depositors, in making such deposits, had not parted with title to their respective drafts and checks, and that, as a result, since the Clearwater bank had merely acted as agent for them in sending the items to the St. Petersburg bank, there was a fiduciary relationship between them and the Clearwater bank which prevented the operation as between the two banks of the rule of compensation. The argument against compensation, which argument was held to be sound by the Supreme Court, is set forth in the opinion of the court as follows: " * * * that the debt of the St. Petersburg bank was not to the Clearwater bank, which was a mere collecting agent, but to the depositors. The conclusion is that, while the Clearwater bank individually owed the receiver of the St. Petersburg bank, the latter did not owe the former, but at best the claim was made as an agent."

If the relationship between the two banks had been such as would have prevented the taking place of compensation, then the court need not have gone to such length to point out that the original depositors remained the owners of the items, and that therefore there could be no compensation between the two banks, because, if the court had felt that compensation would not have taken place between the banks because of the fiduciary relationship, it could merely have said that in either case there could not have been compensation and it need not have taken the great pains it did take to show that there was a fiduciary relationship between the owners of the items and the Clearwater bank, in which they had been deposited for collection.

In Palmer v. Haynes & Company, supra, it was held that no compensation could take place, the syllabus reading, "one who receives a note as a broker cannot claim any property under it as a creditor of the bailor," but the facts were that the broker did not comply with the duty which would have been imposed upon him had he accepted the mandate and that, before doing so, he attempted to appropriate the note to his own use. The court said that the broker "in that capacity received from one Franklin, a note, to be discounted." He did not discount the note, but retained it and claimed that he was entitled to hold it because Franklin was already indebted

to him. The court said: "The note was delivered to the plaintiff in his character of broker, to be discounted; and his receiving it as such, made him the agent of the insolvent. His subsequent attempt to turn this transaction into a contract by which he acquired a right in himself to the bill, is very unjustifiable; it is as immoral as it is illegal."

In Forsyth v. Martin et al., supra, is found a situation very similar to that which was presented in Palmer v. Haynes & Co., for there a draft drawn on Martin & Co. in New Orleans was presented to Martin & Co. for acceptance and was left at their place of business. They retained it without paying it or accepting it, and then contended that they were entitled to retain it because the drawer was indebted to them. The court held that they might not do so, stating that, under the law at that time, " * * * in every case of a presentment for acceptance, the drawee is entitled, if he require it, to have twenty-four hours to consider whether he will accept the bill or not."

The court went on to say: " * * * it is usual, in such cases, for the holder to leave the bill with him during that period. If there is any trust which above all others ought to be held sacred by men of business, it is this. The drawee retaining the bill, for the purpose of determining on its acceptance, holds it on deposit, the violation of which the law considers as a species of theft."

We think that the language quoted shows that that case has no application here.

Nor can Schmidt v. City of New Orleans, supra, afford any comfort, for there, again, is found a case involving public funds collected by a public official. The surety of a sheriff, when an attempt was made to hold it liable for the sheriff's failure to account for moneys collected in his official capacity, contended that compensation had taken place between this official debt of the sheriff and other amounts due to him. The court merely held that no such compensation could take place, basing it on the fact that the moneys collected by the sheriff are public funds and may not be compensated for.

It must be conceded that, if the Canal Bank was not the owner of the two checks at that time, but was merely acting as collecting agent for the true owner, whether that owner was the drawer of the checks or

the Birmingham bank, then the fiduciary relationship which existed between the Canal Bank as agent for the owner of the checks and that owner would have prevented the operation of the principle of compensation, because then the debt due by the Jackson bank to the Canal Bank would have been due to the Canal Bank as agent for the owner of the checks, whereas the debt due by the Canal Bank to the Jackson bank did not in any way involve any third person. In fact, that situation illustrates perfectly the distinction pointed out above by Marcadé.

We have, for the purposes of this discussion and for the moment, treated the items as the property of the Canal Bank. Whether or not they were in truth the property of that bank is the second question which is presented, and on this question depends whether the fund in possession of that bank belonged to the Investors Syndicate, because, if, as a result of the transaction between the Investors Syndicate and the Birmingham bank and the transaction between the Birmingham bank and the Canal Bank, those two banks were merely acting as agent for the Investors Syndicate, then funds in possession of either of said agents actually belonged to the principal and may be claimed by the principal, not by virtue of lien and privilege, but by virtue of absolute ownership.

It is well to bear in mind that the Investors Syndicate is not claiming a privilege under Act No. 63 of 1926. It maintains that it never parted with the ownership of the checks in question and that therefore, if there is a fund in possession of the liquidators of the Canal Bank which represents the proceeds of those checks, it is entitled to that fund as actual owner. So far as the Canal Bank is concerned, either Investors Syndicate was the owner of the checks until they reached the Jackson bank, or that syndicate cannot recover.

The contention that it was and remained the owner of the checks is based on the view that, by reason of the wording of the document given by the Birmingham bank and by reason of the understanding between the parties, when the checks were received, they were received for collection only, and title thereto did not pass to the bank as the result of the deposit. The stipulation which appears on the deposit receipt has already been quoted and need

not be repeated here. The Supreme Court of Louisiana, in Re Liquidation of Canal Bank & Trust Company (Intervention of Clark & Company), 181 La. 856, 160 So. 609, 615, 99 A.L.R. 473, discussed at great length the effect of a deposit slip so similar to that which was employed here that it cannot be successfully contended that there is a distinction between the two documents. In that case the court said that whether, in such situation, the item is purchased by the bank, or is taken by it as agent for the depositor and for collection, depends upon the intention of the parties and not upon the wording of the deposit slip. There, in spite of the fact that the deposit slip was almost identical with that which was used here and from which we have quoted, the court said:

"In the instant case the intervener does not claim that the negotiable drafts were deposited with any restrictive indorsements or that its right to immediately check against the amount of the drafts, which was at once credited to its checking account, was in any way conditional or restricted. The evidence unquestionably shows that it was the intention of the intervener to deposit the drafts and not place them with the transit department of the bank that handled only items for collection. Intervener knew that the teller immediately credited the drafts to its checking account, both on the bank's books and on the depositor's passbook, so that they might be drawn against at its pleasure, and did not protest or request that the status of the transaction be changed to a regular collection item through the transit department, and, consequently, acquiesced in the way or manner that the bank handled the drafts. Intervener does not deny that, if it so desired it could have checked out the credited proceeds of the draft on the same day of the deposit, or on March 1st. The record shows that the intervener did draw out of its account the sum of $36,965.40, on March 1st. While it did not deplete the full amount of its credit, there being a large balance, is there any doubt that if it had elected to do so, it was within its power and right to accomplish this result? The withdrawal or the checking out of the funds credited to its account was left entirely to the volition of the intervener. The placing at the disposal of the intervener of the amount or face value of the drafts by immediately crediting its check-

ing account therewith was equivalent to placing to its credit and at the command of the intervener that much cash."

A study of that decision shows that the question of the effect of the wording of the deposit slip was squarely passed upon and, consequently, it may not now be considered by us. We conclude, then, that on the question of ownership of the checks we must look to the evidence which may throw light upon the intention of the parties when the deposit was made.

We find nothing whatever in the record to change the effect of the fact that credit was requested when the items were remitted and that credit was given immediately by the Birmingham bank to the Investors Syndicate when the items were received by it. So far as the record shows, those funds might have been at once withdrawn by the Investors Syndicate when credit was given on February 25th by the Birmingham bank.

■ Leaving for the moment the question of ownership of the checks as between the plaintiff and the Birmingham bank, we consider the argument that, as between the Birmingham bank and the Canal bank, the latter did not become the owner of the checks when it received them from the former and gave credit therefor. But we find that the said checks reached the Canal Bank without any special instructions to the effect that any course of conduct different from that established in the past should be followed in this instance and, so far as the record shows, in the past all similar items had been received for credit and had been available for the immediate use of the Birmingham bank. We are told, however, that a distinction exists by reason of the fact that the Birmingham bank did not customarily withdraw its funds from its account in the Canal Bank by check, but did so by writing letters to the said Canal Bank requesting that it make remittance by wire to other banks for account of the Birmingham bank. We are unable to see that this fact in any way affects the situation. The important point is that the Birmingham bank maintained a deposit account with the Canal Bank and that the latter bank, in this instance and according to custom, credited that account immediately upon receiving the checks.

Resourceful counsel, however, have strenuously urged us to consider two further arguments:

First, that the effect of the decision in the cases known as the Joffrion-Woods Cases (Joffrion-Woods v. Brock [La.App.] 154 So. 660, Joffrion-Woods v. St. James Bank & Trust Co., 171 La. 172, 129 So. 808, Joffrion-Woods v. Hibernia Bank, 19 La.App. 419, 139 So. 22, and Joffrion-Woods v. Brock, 180 La. 771, 157 So. 589) is contrary to the views which we have expressed and that, as a result of those decisions, we should hold that the title to the checks remained always in the depositor.

The second argument is that in the Canal Bank-Intervention of Clark Case, supra, the court did not give proper consideration to Act No. 85 of 1916 and to Act No. 86 of 1926, which statutes, counsel say, indicate an intention on the part of the legislators that in Louisiana, at least, checks deposited as were those which are involved here remain the property of the depositor until the proceeds are received by the bank in which the checks are deposited.

As to the first argument, there are certain similarities between the facts of the Joffrion-Woods Cases and those found here, but the fundamental difference between them lies in the fact that there the check which was drawn on the Bank of White Castle was placed with the St. James Bank & Trust Company "for collection" and was then sent by the St. James Bank, as the agent of the owner, to the Hibernia Bank, also "for collection," so that the original owner never parted with title to the check. That this was the fact is shown by the agreed statement of fact as it appears in Joffrion-Woods v. Hibernia Bank & Trust Co., supra, in which statement the parties agreed that the check which was involved was placed with the St. James Bank & Trust Company for collection and was sent by the St. James Bank & Trust Company to the Hibernia Bank & Trust Company for collection. It plainly appears that this court and the Supreme Court considered it as conceded that the check had been deposited "for collection," for the Supreme Court so states in Joffrion-Woods v. Brock, supra, saying, "plaintiff indorsed the check and deposited it for collection." It thus follows from the agreed statement of fact that the owner of the check never parted with title thereto.

■ We must concede that, had the Clark Case been decided before the Joff-

rion-Woods Cases arose, the agreed statement of fact quoted from might never have been entered into, because at that time counsel for the parties were no doubt of the opinion that, since the check had been placed with the bank with a deposit slip similar to that which was involved in the Clark Case, the item had been placed for collection, and entered the stipulation of fact on the erroneous legal conclusion that the statements made in the deposit slip controlled the situation. But, whether the parties should have made the agreed statement of fact or not, the fact remains that they did do so, and that decision is based on that statement of fact under which the depositor remained the owner of the check. Therefore the conclusion reached in those cases is in no way antagonistic to the conclusion reached in the Clark Case that, where the intention of the parties is that the depositor is to receive immediate credit, title to the instrument passes to the bank subject only to the right of the bank to "charge back" to the depositor the amount of any such item which may not be ultimately collected. That the bank has the right to "charge back" the item does not mean that it has not purchased the item, but merely that, under the indorsement of the original owner, it (the bank) may look to that indorser to make good the loss that it has sustained because of the fact that the item has not been collected.

■ The other argument which counsel make and which they rely upon as distinguishing this case from the Clark Case is based on the alleged effect of Acts No. 85 of 1916 and No. 86 of 1926. These statutes, as counsel for plaintiff state, relieve "a bank of liability, except for its own negligence, where failure to collect paper deposited with the bank results from the fault of some correspondent bank." The contention is that, if the bank which receives an item receives it as owner, it cannot be "liable" for any loss which may result from failure to collect, because the word "liable" implies an obligation to some one else and that it must follow that the lawmakers, when they referred to the relief from liability of the bank, contemplated that in such case the bank would take such items as agent for collection and would therefore not be liable for failure to collect under the circumstances set forth in the statutes. It is argued that, if the lawmakers had in mind the right of the bank to "charge back" the amount of the item which it had purchased and which had

not been collected, the statutes would not have used the term "liable."

It should be noted, however, that the statutes now under discussion apply in both situations, either where an item is received for collection or where it is received for deposit. As contended by counsel for plaintiff, there obviously cannot be liability unless there is some one to be liable to, yet the acts provide that, if any bank receives for deposit any check and handles it in accordance with the statute, it shall not be "liable." Liable to whom? If it has taken the item for deposit and has given credit, it owns the item, so manifestly it cannot be liable. It might be made to bear the loss and that might have been the result had not those acts been passed to prevent such possible contingency. However, as a result of them, a bank which receives an item for collection is not liable under the circumstances set forth in the statute and a bank which receives for deposit and credit is not deprived of its right to "charge back" the amount of the item. This interpretation of the meaning of those statutes is clearly set forth in the "per curiam" opinion rendered on application for rehearing in the Clark Case, supra, in which both of the statutes were taken into consideration by the Supreme Court.

It is true that this question has been discussed by other courts in cases arising in states in which there are statutes similar to those now under consideration and that, in some of those cases—notably Andrews v. First National Bank of Tampa, 115 Fla. 67, 155 So. 143, and Dakin v. Bayly, supra —it was said that such statutes indicate an intention on the part of the framers that the depositor is to remain the owner of the instrument deposited.

But the fact that similar statutes have, by other courts, been looked upon as evidencing an intention of the lawmakers to recognize that no transfer of the deposit item takes place, cannot, upon this court at least, have any effect because, in the Clark Case, on application for rehearing, our Supreme Court recognized that conflicting line of decisions and said that "the so-called 'weight of authority' in other jurisdictions, on the question whether title to the instrument had passed to the local bank, was a matter of no importance whatever.

■ We finally consider the fact that at first the Canal Bank did not claim to be

the owner of the checks which it had received from the Birmingham bank. This seems to be true, but at that time the Clark Case had not been decided; the Canal Bank did not know that, as a matter of law, it had become the owner of the checks. In other words, it was in the position in which the parties believed themselves to be in the Joffrion-Woods Cases. No other party was prejudiced by this error of law and, before any rights were adjudicated upon, that bank discovered its error (by a review of the Clark decision) and now takes the position that it became the owner of the proceeds of the items which it had purchased from the Birmingham bank.

Our conclusion is that the Jackson bank made payment by compensation to the Canal Bank, and that therefore the Jackson bank is not liable to Investors Syndicate, and our further conclusion is that the Birmingham bank became the owner of the checks when the Investors Syndicate deposited them for credit and that therefore the rights, pro and con, between the Investors Syndicate and the Birmingham bank, do not concern us, but that the said Investors Syndicate is not entitled to a judgment against the liquidators of the Canal Bank.

It is therefore ordered, adjudged, and decreed that the judgment appealed from, in so far as it runs against Deposit Guaranty Bank & Trust Company and in favor of Investors Syndicate, be and it is annulled, avoided, and reversed, and that there now be judgment dismissing plaintiff's suit as against said Deposit Guaranty Bank & Trust Company at its cost.

It is further ordered, adjudged, and decreed that, in all other respects, the judgment appealed from be, and it is affirmed.

Reversed in part; affirmed in part.